## JAMES E. HULETT ET AL. v. RAS PLATT ET AL.

### Decided February 29, 1908.

**1.—Judicial Districts—Act of 1841.**

It seems that the Act of January 22, 1841, of the Congress of the Republic of Texas whereby it was attempted to create a judicial district out of a subdivision of Liberty County, and the appointment of Land Commissioners of said district, was unconstitutional.

**2.—Tenant—Attornment—Limitation.**

A tenant cannot dispute the title of his landlord and attorn to another without surrendering the possession to his landlord, and until such surrender and notice to the landlord the possession of the tenant inures to the benefit of the landlord.

**3.—Patent—Limitation of Three Years.**

The possession of a patentee extends to the boundaries of his patent. Evidence as to possession considered, and held to support a finding that a patentee acquired title under the three years' statute of limitation to the land described in his grant.

**4.—Limitation of Three Years—Conflicting Surveys—Constitution of 1876.**

The provisions of section 2, article 14, of the Constitution of 1876 made no change in the rule that possession under a junior patent founded on junior rights will support the three years' statute of limitation. Nor is said rule affected by the provisions of article 4174 of the Revised Statutes of 1895.

**5.—Junior Patent—Limitation of Three Years.**

It is established by the decisions of this State that where an officer having authority to issue a patent does so in the manner and form prescribed by law, the patent thus issued conveys to the patentee whatever right the State has and is good against the State and all parties not having a superior right, and will support the three years' statute of limitation. While such patent may not pass the paramount title or even the legal title, the law does not require that it should do so in order to be the basis for the three years' statute of limitation.

**6.—Patent—Procurement—Fraud.**

The fraud which will vitiate a patent issued by the proper authority must be one that is practiced upon the State or its duly constituted agents, and not upon the claimant of the land.

Error from the District Court of Tyler County. Tried below before Hon. W. B. Powell.

*Joe H. Eagle,* for plaintiffs in error.—A junior patent founded upon a valid senior equity will prevail over a senior patent founded upon a junior equity. Hollingsworth v. Holshausen, 25 Texas, 635; O'Neal v. Manning, 48 Texas, 406; Johnson v. Eldridge, 49 Texas, 521; Evitts v. Roth, 61 Texas, 87.

A certificate for land is evidence of legal right; and when selection of land is made and such certificate located thereon, such evidence of right attaches to the land. 1 Sayles' Real Estate Laws of Texas, art 488; 1 Sayles' Early Laws of Texas, art. 997, sub. 23; Rev. Stats., 5259; Hamilton v. Avery, 20 Texas, 634-5-6; Sayles' Early Laws of Texas, arts. 1758, 1945, 2125, 2253.

When a certificate for land is issued, and is duly located on the unappropriated public domain of the State, such land becomes, within the meaning of the law, appropriated, and is not thereafterwards subject to location, settlement or purchase, by any other person whomsoever, under any of the laws of Texas. Revised Statutes, art. 3921; Windsor v. O'Connor, 69 Texas, 571; Adams v. Houston & T. C. Ry., 70 Texas, 252; Sayles' Early Laws of Texas, art. 997, sub. 23; De Montel v. Speed, 53 Texas, 339.

The fact that the patent under which the defendants in error claim is senior in point of time, does not of itself constitute the valid title to the land as against the patent under which plaintiffs in error claim, which is junior in point of time; but the validity of either patent is entirely dependent upon priority of right. Sayles' Real Estate Laws of Texas, art. 530; Lewis v. Durst, 10 Texas, 398; Williams v. Craig, 10 Texas, 437; Hollingsworth v. Holshousen, 17 Texas, 41; Wilson v. Williams, 25 Texas, 55; Wyllie v. Wynne, 26 Texas, 43; Welder v. Carroll, 29 Texas, 318; Magee v. Chadoin, 30 Texas, 644; Gould v. West, 32 Texas, 339; Ward v. Conner, 33 Texas, 549; Weir v. Van Bibber, 34 Texas, 227; Houston & T. C. R. Co. v. McGehee, 49 Texas, 481; McKinney v. Grassmeyer, 51

Texas, 376; House v. Talbot, 51 Texas, 462; Hanrick v. Cavanaugh, 60 Texas, 1; Cassin v. O'Sullivan, 61 Texas, 594; Byrne v. Fagan, 16 Texas, 392; Decourt v. Sproul, 66 Texas, 368; Styles v. Gray, 10 Texas, 503; Russell v. Randolph, 11 Texas, 460; Byrne v. Fagan, 16 Texas, 392; Bowmer v. Hicks, 22 Texas, 155; Johnson v. Smith, 21 Texas, 722.

A grant or patent obtained by fraud is void, and as such will not support the three or five year statutes of limitations. Styles v. Gray, 10 Texas, 505; Kohlhass v. Linney, 26 Texas, 334; Marsh v. Weir, 21 Texas, 111; Hancock v. McKinney, 7 Texas, 440; McWhirter v. Allen, 1 Texas Civ. App., 649.

A location made, since the adoption of the Constitution of 1876, in conflict with a valid location previously made, is void, and a patent issued thereunder is likewise void, and as such would not support a plea of the statute of limitations of either three or five years. Constitution, art. 14, sec. 2; Gunter v. Meade, 78 Texas, 634; Adams v. H. & T. C., 70 Texas, 253; Besson v. Richards, 24 Texas Civ. App., 64; League v. Rogan, 59 Texas, 431.

*Greer, Minor & Miller* and *J. A. Mooney,* for defendants in error. —Section 2, art. 14, of the Constitution of 1876, applies to land certificates alone, while art. 4174 of the Revised Statutes is restricted to "homestead donations" alone; and the Act of July 14, 1879, having no provision in it similar to either of the above provisions; consequently, the land in question purchased from and patented by the State under said Act of July 14, 1879 (the "Four-Bit" Act), is held by defendants under a patent which is neither void on its face, as being contrary to the law, nor for want of power in the officer patenting the same, and will, therefore, support the three years limitation, just as in those cases where it is held a junior patent or grant will support it. Howell v. Hanrick, 88 Texas, 412; League v. Rogan, 59 Texas, 433; Marsh v. Weir, 21 Texas, 110; Galand v. Goliad, 32 Texas, 776; Whitehead v. Foley, 28 Texas, 12; Grigsby v. May, 84 Texas, 249; Gullett v. O'Conner, 54 Texas, 416; Lubbock v. Binns, 20 Texas Civ. App., 410; Wynne v. Kennedy, 11 Texas Civ. App., 698; Burleson v. Burleson, 28 Texas, 417.

There was no fraud perpetrated upon the officers of the State in procuring the Platt patent. They had both files before them, and believing that Platt was entitled to the land, issued the patent to him, and the error, if any, was one of law, and not of fact, and the error, if any, in issuing the patent is merely the result of a misapprehension of the law, and not of any fraud perpetrated upon the Commissioner of the General Land Office by Platt; and, furthermore, the Platt patent was not one lacking in intrinsic fairness, as there is abundant evidence tending to show that Hulett had abandoned the location. Maxey v. O'Connor, 23 Texas, 238; Johnston v. Smith, 21 Texas, 726; Russell v. Randolph, 11 Texas, 466; Whitehead v. Foley, 28 Texas, 1.

McMEANS, Associate Justice.—This was an action of trespass to try title brought by the plaintiffs in error, Hulett et al., against

the defendants in error, Platt et al., by the filing of plaintiffs' petition on April 23, 1891. Plaintiffs in error are the descendants and only heirs of Sarah E. Hulett, deceased, and defendants in error are the descendants. and only heirs of Bishop Platt, deceased, except the defendant Feagin, who purchased a part of the land in controversy through mesne conveyances under Bishop Platt.

The land in controversy is 440 acres situated in Tyler County, and is covered by two patents, viz.: A patent to Bishop Platt, dated June 17, 1882, and a patent to the heirs of Sarah E. Hulett, dated June 26, 1890. The field notes in both patents are substantially identical. The defendants, Platt, disclaimed as to 192 acres of said survey lying east of Caney Creek and the defendant Feagin disclaimed as to the 248 acres lying west of said creek. Their answer consisted of pleas of not guilty and the three and five years statute of limitations as to the land claimed by them respectively.

The case was submitted to a jury, and after the evidence had been heard the judge peremptorily instructed the jury to return a verdict in favor of defendants for. the respective tracts claimed by them, which the jury did, and judgment was entered on said verdict and in accordance therewith. From an order refusing to plaintiffs a new trial they have appealed to this court.

In order that a clear understanding may be had of the points hereinafter discussed we set out the following findings of fact:

The title of plaintiffs in error originated and matured as follows:

On December 5, 1839, the Board of Land Commissioners of Liberty County issued a conditional certificate for 640 acres of land, 2d class, certificate No. 94, to Aaron Green, under the Act of January 4, 1839, extending donations of land to late emigrants. Prior thereto, on August 1, 1838, said Green had caused field notes to be made for 440 acres of his contemplated certificate. The survey in controversy fell within the original boundaries of Liberty County. Under the Act of January 22, 1841, the purpose and object of which was to organize a certain part of Liberty County for judicial and other purposes, and which part of the territory described in the Act was designated as "Menard," the survey in question fell within the territory of Menard. By the Act of April 3, 1846, the present county of Tyler was created, having the exact boundaries as the territory known as "Menard," so that the land in controversy was first in Liberty, later in the territory of Menard, and later still in the present county of Tyler.

After the organization of the territory known as Menard, and on September 6, 1841, Aaron Green applied to and obtained from the Board of Land Commissioners of said territory an unconditional certificate for 640 acres of land based on his conditional certificate. Green afterwards took said unconditional certificate to the official surveyor and caused him to again run off and establish the lines of said 440 acres and to make field notes thereof and to return same into the office of the county surveyor of Tyler County, which the county surveyor of Liberty County certified to the Commissioner of the General Land Office to be correct. The field notes were recorded on August 29, 1844, in Book Surveys Record of Tyler

County, known as the Liberty District Book, and has remained there to this time as a record of the county clerk of Tyler County.

On June 11, 1852, Aaron Green transferred his rights in and to the location, survey and field notes of said 440 acres to Sarah E. Hulett, and authorized the Commissioner of the General Land Office to issue patent to said Sarah E. Hulett therefor, and this transfer was filed in the Land Office April 19, 1854.

On June 26, 1890, a patent was issued to Mrs. Hulett as assignee of Aaron Green, her heirs and assigns, for the 440 acres of land in controversy.

The title of defendants in error originated as follows:

In 1882 Bishop Platt filed application with the county surveyor of Tyler County, to purchase 440 acres of land under what was known as the "Fifty Cent Act," and recorded his field notes in State Book, being the record of the county surveyor of said county in 1882, and his survey was made in 1882 in accordance with said application by the county surveyor, and he filed the same in the office of the Commissioner of the General Land Office in 1882, the field notes of his survey and application being substantially identical with the field notes made for Aaron Green in 1844; and a patent was issued to Platt for said 440 acres, on June 27, 1882. In 1885 Platt conveyed to Payne 192 acres out of the survey which lies east of Caney Creek, and in 1886 Payne conveyed same to Handley & Feagin, and in 1889 Handley conveyed his interest to defendant in error Feagin. Platt died about 1890, and his heirs now assert title to the 248 acres west of Caney Creek, and Feagin asserts title to the 192 acres east of said creek, under both the patent issued in 1882 and under their pleas and proof of limitation under said patent.

The material questions presented for our consideration are these:

First. Whether the rights asserted in this suit by plaintiffs in error, which in their inception were senior in point of time, although junior in their recognition by the State in the issuance of patent thereon, shall or shall not prevail over the rights of defendants in error, which were junior in inception, although senior in their recognition by the State in the issuance of patent thereon.

Second. Whether defendants in error should prevail against plaintiffs in error upon their pleas and proof of limitation.

Third. Whether the Platt patent, senior in date but junior in its inception to the Hulett patent, will support the three or five years statute of limitations, and if so whether the court erred in peremptorily instructing the jury to find a verdict for defendants in error.

Appellants, upon their proposition that a junior patent founded upon a valid senior equity will prevail over a senior patent founded upon a junior equity, base the contention that inasmuch as the Hulett title had its origin in the issuance of the conditional certificate in 1839, and in the issuance of the unconditional certificate by the Board of Land Commissioners of Menard in 1841, their title under the patent issued in 1890 is superior to that of appellees, whose title had origin in 1882. To meet this contention appellees insist that the Act of January 22, 1841, creating the District of

Menard, in Liberty County, was unconstitutional and void, and that by reason thereof the organization of said District and the appointment and election of officers thereunder, and particularly the creation of the Land Board of said Menard District, was likewise void; that said Land Board was neither a *de jure* nor a *de facto* court or board, nor were its commissioners *de jure* or *de facto* officers, and that the unconditional certificate issued by said Land Board to Aaron Green was absolutely void; that the existence of a valid unconditional certificate was essential to the validity of the patent, hence the patent issued to Green was without authority of law and passed no title, at least, not such a title as was superior to that passed to Platt under the patent issued in 1882.

It may be well to state, in passing, that it appears from the decisions of our Supreme Court in the cases of Stockton v. Montgomery, Dallam, 474, and Allen v. Scott, Dallam, 615, the attempted creation of such districts as Menard was unconstitutional and that those districts never had any legal existence; and it may be that the appointment of Land Commissioners for said district and the organization of said board into a court or Board of Land Commissioners was a mere nullity, and their acts without validity. Pretermitting a discussion of these questions, as well as the question as to which of the two patents passed the superior title, because, in the view we take, a determination of these matters is not necessary to a decision of the case, we come now to a discussion of the question whether defendants in error should prevail in this suit upon their pleas and proof of limitation.

The evidence in support of limitation justifies the following conclusions of fact:

About the year 1878 one McMickle cleared and fenced about five acres of land, part of the 440 acres in controversy, on the west side of Caney Creek, and began its cultivation and continued its use and enjoyment until some time before the year 1882, when he sold his improvements to Bishop Platt. Platt upon his purchase took immediate possession and cultivated the land and kept up the fences from the date of his purchase until his death, which occurred about 1890. During this time he extended his improvements until the land actually inclosed and cultivated about trebled the original improvements made by McMickle, and the improved land was cultivated by him every year. A patent for the 440 acres was issued to Bishop Platt June 27, 1882, under which he claimed title to the land. After his death, the widow of Platt procured William James to take charge of the improved land and he held possession for the Platts and cultivated the land for about two or three years, and since then up to the date of the trial the heirs of Bishop Platt have been in actual possession, use and enjoyment thereof.

In 1881 John H. Kirby was the agent of Mrs. Hulett, who was claiming the land by virtue of her purchase of the certificate therefor from Aaron Green. In June of that year Kirby had a conversation with Bishop Platt in which the latter stated that he was using the land with the consent of Mrs. Hulett; and he bought the land in for Mrs. Hulett at a tax sale held that day. While James held

possession of the land he approached Kirby to get his permission to cultivate the land, to split rails and clear more land, and informed Kirby that he was then holding possession for the Platts and wanted his, Kirby's authority to use the land also; that he wanted the refusal to buy the land if Mrs. Hulett won it or if the Platts won it. This conversation was soon after Bishop Platt's death.

As to the possession of the 192 acres east of Caney Creek we find the following facts:

Feagin claimed title under a regular chain of transfer from Bishop Platt, the conveyances under which he claimed being a deed from Bishop Platt to Payne, dated September 19, 1885, a deed from Payne to Handley and Feagin, dated November 13, 1886, and a deed from Handley conveying his undivided half interest to Feagin, dated December 6, 1889. In 1887 Feagin procured Ed Bryant to move on the land as his tenant, and in 1888 Bryant cleared, fenced and cultivated about five acres, and lived on the land six years thereafter, extending the improvements until he had from fifteen to seventeen acres cleared up; his family lived on the land with him; he built a crib or two on the land, dug a well, and had an orchard on it and cultivated it six years in succession. Feagin has paid taxes on the land for each year since 1887.

The testimony is undisputed that Bishop Platt and those holding under him had that portion of the survey west of Caney Creek in cultivation each year from 1884 to the date of the trial. The only semblance of opposing testimony was the statement of the witness Kirby that in either 1886 or 1888 William James, the tenant of the Platts, told him he was in possession of the land for the Platts and wanted to make some arrangement with him with reference to the land. The witness James testified that he had moved away in 1884 and did not return until 1888, and that when he had the conversation with Kirby he was in possession of the land, which was after Bishop Platt's death, which the undisputed proof shows did not occur until about 1890. But if it be conceded that this conversation occurred in 1886, still Bishop Platt had already been in the actual, adverse possession of the land for more than three years. The patent was issued to him on June 27, 1882. In making the statement in 1881, to Kirby, that he was using the land with the consent of Mrs. Hulett, such holding terminated and became adverse upon procuring the patent; and from that date until the year 1886, which is the earliest date that the conversation between Kirby and James is fixed, nearly four years had elapsed, nearly a year more than enough to perfect title by limitation. Assuming, then, that the effect of that conversation with James was to make him the tenant of Hulett, or the joint tenant of Hulett and Platt, still Bishop Platt had at that time acquired title by the three years statute of limitation. It is a well recognized principle of law that a tenant can not dispute the title of his landlord and attorn to another without surrendering the possession to him. Flanagan v. Pearson, 61 Texas, 305; Juneman v. Franklin, 67 Texas, 415; Huntington v. Mayfield, 55 S. W. Rep., 361.

There was no apparent attempt on the part of James to repudiate

his tenancy under the Platts, and hold for the Huletts in exclusion to them; but if such was his intention, in the absence of notice to the Platts of a surrender of the possession held by him for them, he continued to be their tenant and they were unaffected by any agreement made with Kirby, and his possession inured to the benefit of the Platts.

What we have said above applies particularly to the 248 acres lying west of Caney Creek, but applies also to the 192 acres lying east of the creek and claimed by defendant Feagin, because Bishop Platt acquired his patent on June 27, 1882, while the deed of conveyance executed to Payne for the 192 acres, and under which Feagin claims, was not made until September 19, 1885, and therefore more than three full years elapsed from the date of the issuance of the patent until the tract of 192 acres was severed by the deed from Platt to Payne; and prior to the severance, the possession of Platt extended to the entire survey and thereby perfected his title to the entire survey by limitation. Parker v. Baines, 65 Texas, 605; Whitehead v. Foley, 28 Texas, 285; Cantagrel v. Von Lupin, 58 Texas, 577; Peyton v. Barton, 53 Texas, 298; Brownson v. Scanlan, 59 Texas, 226; Tarlton v. Kirkpatrick, 1 Texas Civ. App., 113; Wallace v. Wilcox, 27 Texas, 67; Warren v. Frederichs, 76 Texas, 651.

But as respects the 192 acres, the evidence above stated shows without conflict that Feagin placed Ed Bryant in possession in the fall of 1887; that Bryant built a house thereon, and during the year 1888 cultivated a tract of five acres, and remaining in possession, continued to extend and enlarge his improvements for a period of six years. The suit was filed May 23, 1901. Therefore Bryant held possession of the land more than four year consecutively before the suit was filed, thereby giving Feagin a perfect title under the three years statute of limitations. Hence, Feagin had title by the three years limitation, first under Bishop Platt's possession, and second, under himself through his tenant Bryant. And if it were conceded that the defendant had notice of the rights of the Huletts, and if such rights were superior rights, still such notice would not affect their rights under the three years statute of limitation. Grigsby v. May, 84 Texas, 255.

But appellants while conceding that prior to the adoption of the Constitution of 1876, if two surveys conflicted in their location, and patents issued to both claimants, the junior, even if founded on junior rights, would support the three years statute of limitation, contend that since said time a location made in conflict with a valid location previously made, is void, and that a patent issued thereunder is likewise void, and as such would not support a plea of limitations of either three or five years; and that therefore the Platt patent, under which defendants in error claim, is not such an instrument of writing as would enable them to prescribe under it by the three or five years statute of limitation; and they rely upon section 2 of article 14 to change this rule. This contention can not be sustained. Howell v. Hanrick, 88 Texas, 412; Smith v. Power, 23 Texas, 34; Lubbock v. Binns, 20 Texas Civ. App., 411;

Wynne v. Kennedy, 11 Texas Civ. App., 698; Gullett v. O'Connor, 54 Texas, 416; League v. Rogan, 59 Texas, 427; Burleson v. Burleson, 28 Texas, 417.

The portion of section 2, article 14, applicable reads as follows: "Provided, that all genuine land certificates heretofore or hereafter issued shall be located, surveyed or patented only upon vacant and unappropriated public domain, and not upon any land titled or equitably owned under color of title from the sovereignty of the State, evidence of the appropriation of which is on the county records or in the General Land Office; or when the appropriation is evidenced by the occupation of the owner, or of some person holding for him."

Article 4174, Revised Statutes 1895, is as follows:

"No person shall settle upon or occupy, nor shall any survey be made or patented under the provisions of this chapter upon any land titled, or equitably owned under color of title from the sovereignty of the State, evidence of the appropriation of which is on the county records or in the General Land Office, or when the appropriation is evidenced by the occupation of the owner or of some person holding for him."

By authority of our Supreme Court, in Howell v. Hanrick, 88 Texas, 412, it must be held that the constitutional provision referred to applies only to land certificates. In that case Justice Brown, speaking for the court, says: "This language applies alone to land certificates and can not be construed to deny to any person the right to acquire any of the public domain subject to such acquisition by any lawful means except by location under a land certificate." The rule announced in Smith v. Power, 23 Texas, 34, in determining the character of title which will support the three years limitation says:

"To render a possession of three years a bar to an action by the true owner, the defendant in possession must have held under title, or color of title, as defined in the fifteen section of the statute. (Hart. Dig., art. 2391.) To constitute such title, or color of title, there must be a 'chain of transfer from or under the sovereignty of the soil.' This necessarily presupposes a grant from the government, as the basis of such transfer. And the grant must be effectual to convey to the grantee whatever right or title the government had in the land, at the time of making the grant. It need not necessarily carry with it the paramount title; but it must be title, as against the government, valid in itself, when tested by itself, and not tried by the title of others. It must have intrinsic validity, as between the parties to it; though it may be relatively void, as respects the rights of third persons."

In Lubbock v. Binns, 20 Texas Civ. App., 410, the court says: "That the owner of the Uglow certificate acquired by his location, survey and patent the complete and valid title to the land covered by the patent and voidable only at the suit of the owners of the Bailey & Batchelder certificate (the prior certificate), and those

claiming under them, notwithstanding the fact that his location was upon titled lands, is indisputable."

In Wynne v. Kennedy, 11 Texas Civ. App., 698, the court says: "It thus follows, we think, that the land in controversy comes within the language of article 14, section 2, of the Constitution, 'as land equitably owned under color of title from the sovereignty of the State, evidence of the appropriation of which is on the county records or in the General Land Office;' and that as such it was withheld from the location of the certificate of Hill, appellants' vendor. Adams v. Houston & T. C. Ry., 70 Texas, 260. It does not follow, however, that the patent issued by virtue of that location was absolutely void. That instrument would seem to have passed to appellants' vendor the naked legal title of the State."

In Gullett v. O'Connor, 54 Texas, 416, the court says: "I also concur in the opinion of the court below that while the subsequent location of the land by the party under whom appellee claims, was unauthorized, and the commissioner was forbidden by the Constitution from patenting it upon such location, still the patent when issued is not absolutely null and void. It is voidable, or, as it is often phrased, void, as to those having a prior and superior equitable right to the land. It may be cancelled and annulled by or at the suit of the party having prior equitable title to the land, and a new patent issued in lieu thereof to him. Or the legal title vested by such patent may, by a court of equity, be divested out of the patentee, and vested in the holder of the prior and better equitable right. But as the patent is not void in the strict and absolute sense of the word, I think with the court that it is well settled that none but such as appear in some way connected with, or hold and claim under the prior equitable title, can impeach the patent or resist a recovery of the land by the patentee, by reason of the superior equity of the prior locator. Portis v. Hill, 14 Texas, 69; Burleson v. Burleson, 28 Texas, 383; Shields v. Hunt, 45 Texas, 424; Johnson v. Timmons, 50 Texas, 521; Fitch v. Boyer, 51 Texas, 336."

In the case at bar the patent was regularly issued to Platt by the Commissioner of the General Land Office, the officer entrusted with the duty of issuing patents. Hence, his act in issuing the patent was not without warrant of law, nor was he wholly without authority to issue the same. It was, at most, but an erroneous exercise of power "the extending of a title to one not legally entitled, but whom he supposed to be," and sufficiently as between the State and Platt to pass to the latter whatever title the State had, and was also sufficient as between Platt and all third parties except Hulett, assuming for the purpose of argument that Hulett had the prior equity in the land. The act of the Commissioners of the General Land Office in issuing the patent was not, therefore, void, but merely voidable. The case is not, therefore, one in which a patent was issued by an officer without authority to do so, or because the law did not warrant the issuance of a patent under any circumstances. The case is one calling for the application of the rule

announced by Justice Moore and quoted on page 396 of the Hanrick case, which rule is stated as follows:

"It is, however, urged with much force, that while there was a concession of eleven leagues of land to the grantee, this concession had been fully satisfied by the extension of the title upon it for other lands prior to the date of the present grant. And therefore the extension of this title purporting to be in satisfaction of the same concession, must be regarded as extended without authority, and as a fraudulent attempt to appropriate double the quantity of land to which the grantee was legally entitled." The opinion then recites the fact bearing upon this question, and states the conclusion. as follows: "Appellee insists, that by the extension of title for land on the Brazos the authority of the officer to make a grant to the interested party was exhausted, and all subsequent acts by him were null and void. But, in our opinion, the facts do not warrant the conclusion. The alcalde by the order was clothed with the authority to extend title to the interested party, and must determine how and when he had done so. . . . But while we admit that the want of power of an officer to make a grant may be shown, as has been often held, to invalidate such grant, we do not think appellee brings this case within this rule by proving, if such is the proper conclusion from the evidence, that Lessassier granted eleven sitios of land prior to the date of the title now in question. The want of authority of the officer which renders the title void is to be shown by the law, or that he attempted to exercise his authority beyond the territory over which he has jurisdiction, or something of the like character, and not from proof of mere error of the officer, in extending to one not in fact legally entitled, but whom he supposed to be. The alcalde was an officer authorized to grant titles of this character. True, his authority did not justify him in extending to Aguirre more than eleven leagues of land. Nor should the Board of Land Commissioners give more than one certificate to the same applicant, or the second patent on the same certificate; but to do so would be an improper exercise of authority rather than an act without authority. So we think the action of the alcalde, if unwarranted, was an erroneous exercise of authority, instead of an act without authority."

It is true that Justice Brown held that the case before the court was not one for the application of the rule announced by Justice Moore, for the reason that the alcalde was wholly without authority to extend the title, having theretofore exhausted the special authority vested in him, and on this Justice Brown says:

"He was invested with no discretion; the quantity of land to be granted was determined, and the person entitled to it was ascertained; in fact, every right was settled before the business came to his hands. It is not analogous to the case of a Board of Land Commissioners or the Commissioner of the General Land Office. They were empowered by law to issue certificates or patents, to determine when they should be issued, and to whom; they acted for the State, and bound the State."

The learned Justice, referring again to the act of the alcalde in extending title to Hanrick, says:

"If the title under which Hanrick claims had been issued by any person authorized to grant such titles for the State of Coahuila and Texas, then such title, although voidable at the election of the State, would not have been void. But since, as we hold, Lessassier had not authority to make a second grant under the concession of June 14, 1830, his act in making the second grant, if it be a fact that he had previously made a valid grant by virtue of the same concession, was without authority on his part, and has no more effect than if it had been made by a person who never had the semblance of authority; in that event this would be a void grant, and would not appropriate the public domain of the State. Smith v. Power, 23 Texas, 34; Dawson v. McLeary, 29 S. W. Rep., 1044; Lindsey v. Miller, 6 Pet., 666."

In discussing the character of title which will support the three years limitation Justice Stayton in League v. Rogan, 59 Texas, 427, quotes with approval the rule announced in Smith v. Power, 23 Texas, 423. The learned Justice then goes on to say:

"The grant under consideration in that case was one in which there was a want of power in the officer who made the grant, and his act passed nothing whatever to the grantee. In the case before us there was no want of power in the officer who issued the patent; his act passed to the patentee the naked legal title, which was all that the government had to convey at the time the patent issued. It did not pass the paramount title, if the certificate upon which it issued then belonged to League, and not to O'Connell, but it did pass title as against the government, valid in itself, when tested by itself, and not tried by the equitable title claimed to have been vested in Thomas M. League. It passed title as against every other person than Thomas M. League, or some one claiming under him.

"In Burleson v. Burleson, as in the case before us, the vice was in conveyance of the certificate prior to the patent, which is the sole source of legal title in this case, and beyond which no one need go in deraigning title from the sovereignty of the soil as the basis for limitation. The officer who issued the patent, having the power to issue it, it is title, and the fact that there may have been a superior equity can not make it less. It passed the legal title, which was all the State had, and as will be hereafter seen, it is not even necessary, as against all other persons, that the patent should even pass the legal title to the patentee, to constitute the patent 'title' within the meaning of the statute of limitation.

"In case of a location and patent upon land, title to which had already passed from the government by a prior grant, perfect in every respect, no one would doubt that a possession under the junior grant from the government for the requisite period of three years, would give a perfect defense against the owner under the old grant. Marsh v. Weir, 21 Texas, 110; Galan v. Goliad, 32 Texas, 776; Whitehead v. Foley, 28 Texas, 12; Stafford v. King, 30 Texas, 277. Yet in that case there would not only be an older equitable,

but also an older legal title outstanding against which the junior grant would be title within the meaning of the statute.

"Then it is not even necessary that the State, in fact, pass the legal title by the patent; for it can not do so when it has once parted with all title, legal or equitable; and it is sufficient that the patent purport to pass the legal title, and does pass all the title the State has or can convey. Davila v. Mumford, 24 Howard (U. S.), 214. The patent to O'Connell was not void."

In Grigsby v. May, *supra*, the court says: "In the case of a grant of land covered by a prior valid grant, the State has no right to the land, and hence the patent of itself conveys no title; but it would not be claimed that an adverse possession for three years under the junior grant would not confer a complete right to the land—would not confer title, used in the sense of superior right to the land."

The cases cited establish beyond cavil or doubt that where an officer having authority to issue a patent and does so in the manner and form prescribed by law, that a patent thus issued conveys to the patentee whatever right the State has and is good against the State and all parties not having a superior right, and will support the three years statute of limitation; while it may not pass the paramount title, or even the legal title, and the law does not require that it should in order to be the basis of three years limitation. Now, if a junior patent will support the three years limitation, then for greater reason must the prior patent itself support the three years limitation.

The case of Besson v. Richards, 24 Texas Civ. App., 64, cited by appellant, is not in conflict with the views herein expressed. In that case some of the appellants had filed applications for the purchase of school lands and their applications had been accepted. The surveys conflicted with a survey which had been patented. In a suit by the owner of the patented survey the appellants claiming under their applications pleaded the three years statute of limitation. Justice Pleasants, speaking for the court, says:

"We are of opinion that these appellants had no such title, or color of title, to the land claimed by them, as would entitle them to prescribe under the statute of limitations of three years. The inchoate right of a person whose application for the purchase of school lands has been accepted is not sufficient title, or color of title, to support the statute of limitation of three years. . . . We think this right or title of a school land purchaser, prior to the completion of his three year term of occupancy, is no higher than the right of a preemptor, and it is well settled that a preemption claim is not such title, or color of title, as will support the statute," citing Buford v. Bostick, 58 Texas, 70.

Plaintiffs in error further contend that the procurement by Platt of the patent under which defendants in error claim, in view of his knowledge of Mrs. Hulett's equitable claim to the land, was fraud upon her rights, and that the patent having been obtained by such fraud was void, and as such will not support the three or five years statute of limitation. There was no evidence that Bishop

Platt practiced fraud upon the State in the procurement of the patent. The fraud which will vitiate a patent issued by the proper authority must be one that is practiced upon the State, or its duly constituted agents, and not upon a claimant of the land. In Johnston v. Smith, 21 Texas, 726, cited with full approval in Maxey v. O'Connor, 23 Texas, 238, the court says:

"The fraud which will authorize the annulling of a grant in any case is not a presumption or conclusion of law. In the language of Chief Justice Marshall, 'it is not legal and technical, but actual and positive fraud, in fact committed by the person who obtained it.' (3 Pet., 341.) Fraud is not to be presumed, but must be proven. If it existed in this case, it must have consisted in the practicing of an imposition upon the Commissioner by which he was induced to issue the grant, when otherwise he would not have done so, but there is no evidence of this. Russell v. Randolph, 11 Texas, 466; Whitehead v. Foley, 28 Texas, 1."

It follows from what has been said that the trial judge did not err in instructing a verdict for the defendants, and the judgment of the District Court must be affirmed.

*Affirmed.*

Writ of error refused.