ALLEN et al. v. DRAPER et al.
(No. 460–3246.)

(Commission of Appeals of Texas, Section A. Oct. 10, 1923.)

1. Public lands ⟨⟩175(7)—Where contiguous surveys of school land conflicted, total land included in both became one tract of school land.

Where two surveys belonged to the public free school fund, but, on account of a conflict, there was a total of 1,047¾ acres instead of 1,280 acres, the surveys being contiguous, in effect constituted one tract of public land containing 1,047¾ acres, and, as regards title, the original lines became of little consequence.

2. Public lands ⟨⟩175(7)—Where surveys conflicted, commissioner could in selling adopt lines originally made.

Where the tract of free public school land included within surveys 162 and 208 conflicted, the commissioner, for convenience, could adopt the lines as originally made, designating the land sold by describing it as survey No. 208 or No. 162, or he could have sold a portion of each of the surveys giving appropriate field notes of the part actually sold, and the entire acres in the surveys, the commissioner could carve from the whole tract such portion thereof as he might desire or have occasion to sell, giving due observance to the requirements with reference to the size of the tract sold.

3. Public lands ⟨⟩175(7)—Dates of conflicting surveys held immaterial.

Title of school fund to lands within two conflicting surveys *held* not to depend upon the respective dates of the surveys.

4. Public lands ⟨⟩175(7)—School lands within conflicting surveys could be sold by designating them as being part of either survey.

School land within two conflicting surveys 162, 208 could be sold as a part of the public school land of the state, and, if the commissioner saw proper to award it to a purchaser according to the boundaries of survey 208, his action was just as valid and effectual to pass title to the purchaser as if he had sold it according to the boundaries of survey 162, and designated it as a portion of that survey.

5. Public lands ⟨⟩173(8)—School land sold as being in certain survey could not be resold though included in conflicting surveys.

When the commissioner awarded to M. school land included within the boundaries of a certain survey, it was taken from the market, and, so long as that sale remained in good standing, the commissioner could not sell to any other person, notwithstanding the land so sold was also included in another survey.

6. Public lands ⟨⟩173(8)—Superiority of title to school land depends on date of award and not on date of appropriation of land to school fund.

The superiority of title to public school lands awarded to claimant does not depend upon the date the land was segregated from the public domain and appropriated to the public free school fund, but upon the date of his award.

7. Public lands ⟨⟩173(8)—So long as award of school lands is good, state may not award land to second purchaser.

So long as a prior award to land is in good standing, the state is deprived of the power of awarding it to a second purchaser just as effectually as if a patent had issued.

8. Adverse possession ⟨⟩73—Junior patent valid on face, though voidable under Constitution, is sufficient to support limitation.

A junior patent valid on its face and issued under proper authority and in conformity to law, although voidable under Const. art. 14, § 2, because located on land "titled or equitably owned" by reason of a prior location, is suffi-

cient to support the three years' statute of limitation.

**9. Adverse possession ⬀73—Patent issued without authority or unlawfully cannot constitute "title" or "color of title" within statute of limitation.**

A grant from the state in order to constitute title or color of title within the statute of limitation must be effectual to convey whatever right or title the state had when issued, and a patent issued without authority or contrary to law is void and cannot constitute title or color of title.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Color of Title; Title (To Property).]

**10. Public lands ⬀176(1)—Commissioner of land office could not issue patent to part of school land in satisfaction of private certificate.**

A commissioner of a land office had no power or authority to issue a patent to any part of the school land in satisfaction of a private certificate, and in so far as he attempted to do so his act was void.

**11. Adverse possession ⬀73—Issue of patent to school land based on location certificate or individual survey held not to afford color of title.**

Where at the time patent to a certain survey issued a certain number of acres thereof was a part of the public free school fund and could not be disposed of except in the manner provided by law, a patent issued by the commissioner of the land office to a survey based upon a location certificate and a private or individual survey was null and was not color of title within the statute of limitation.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by B. R. Allen and others against J. J. Draper and others. There was a decree against them, and plaintiffs brought error to the Court of Civil Appeals, which affirmed in part, and reversed and rendered in part (204 S. W. 792), and plaintiffs bring error. Judgment of Court of Civil Appeals reversed, and judgment of trial court affirmed in part, and reversed and rendered in part.

John L. Dannelley, of Laredo, for plaintiffs in error.

J. E. Leslie, of McAllen, and Ball & Seeligson, of San Antonio, for defendants in error.

GERMAN, J. B. R. Allen and others, who will be called plaintiffs, brought suit in the district court of Jim Hogg county, Tex., against Henry Edds, to recover a tract of 232¼ acres of land, a part of survey No. 162 of the Hooper & Wade surveys, which was awarded to A. Allen December 16, 1908. They also brought suit against J. J. Draper and others to recover 126³/₅ acres of said survey. Defendant Edds claimed the 232¼ acres as a part of section 208, B. F. & S. sur-

veys, which had been awarded to Leon Martinez April 11, 1906. The Drapers claimed the 126³/₅ acres as a part of survey 207, which was patented to J. M. Hinojosa in 1884. The cases were consolidated and tried as one. The facts with reference to boundaries and the extent of conflicts have been settled. Two main law questions are before us for consideration.

Survey No. 162 was surveyed for the state of Texas as school land in 1877, and was awarded to Allen in December, 1908, the award being in good standing at the time of trial. Survey No. 208 was surveyed for the state of Texas as school land in 1879, and was awarded to Martinez in April, 1906, certificate of occupancy having issued November 9, 1909, and this award was in good standing at the date of trial. There is a conflict of 232¼ acres in these two surveys, and it is admitted that defendant Edds had continuous adverse possession of this conflict for more than three years prior to the filing of the suit. The question for determination as between the Allens and defendant Edds is the relative strength of the titles under these awards, in view of the adverse possession of survey 208. The Allens claim that as survey 162 was surveyed and appropriated to the public school fund prior to the location of survey 208, the location of 208, to the extent of the conflict with 162, was void, and the award made to Martinez, though prior to the award to Allen, being on a void location, passed no right or title, and could not be made the basis of a claim of limitation under the three years' statute. The contention of Edds was twofold. First, that an award of school land is color of title from the sovereignty of the soil for the purpose of three years' limitation, where the adverse possession is held after the completion of three years' occupancy and the issuance of certificate of occupancy by the commissioner of the general land office, the sale being in good standing; and, second, that a sale of school land from a large tract according to the lines of a survey of a part thereof made at a later date than a survey of another part thereof, with which it conflicts, gives superior right to the first awardee, although the second awardee may have purchased according to the lines of the first location or survey.

Survey 207 was patented August 26, 1884, and it conflicts with survey 162 to the extent of 126³/₅ acres. At the time of this patent survey 162 had been located and appropriated to the public free school fund. It is admitted that the Drapers have had adverse possession of this 126³/₅ acres more than three years subsequent to the award to Allen, and the sole question with reference to this conflict is: Does a patent issued upon a junior survey, made by virtue of a locating

---

certificate, which appropriates a part of a senior survey belonging to the public free school fund of the state, constitute title or color of title sufficient to support the three years statute of limitation?

The trial court gave judgment in favor of all the defendants, and plaintiffs took nothing. On appeal, the Court of Civil Appeals for the Fourth supreme judicial district rendered judgment in favor of plaintiffs and against Edds for the 232¼ acres of conflict between survey No. 208 and survey No. 162, and affirmed the judgment in favor of the Drapers for the 126³/₅ acres of survey No. 207 in conflict with survey 162. (Tex. Civ. App.) 204 S. W. 792.

With reference to the so-called conflict between surveys 162 and 208: We do not find it necessary to give consideration to the proposition that an award of school land, after the awardee has fully complied with the law with reference to occupancy of the land and received certificate of occupancy, will constitute title or color of title for the purpose of limitation under the three years statute. The case as to this 232¼ acres can be readily disposed of under the next proposition.

[1, 2] Both surveys 162 and 208 belong to the public free school fund. On account of the conflict, there was a total of 1,047¾ acres instead of 1,280 acres. Being contiguous, these surveys in effect constituted one tract of public school land containing 1,047¾ acres. As regards title, the original lines became of little consequence. It was not necessary for the commissioner of the land office to sell according to the lines of the original survey, nor to sell the tract as a whole. For convenience he could adopt the lines as originally made, designating the land sold by describing it as survey No. 208 or No. 162, or he could have sold a portion of each of the surveys, giving appropriate field notes of the part actually sold. The entire 1,047¾ acres belonging to the public free school fund, the commissioner could carve from the whole tract such portion thereof as he might desire or have occasion to sell, giving due observance to the requirements of the law with reference to the size of the tract sold.

[3, 4] The title of the school fund to the land did not in any manner depend upon the respective dates of the two surveys. The fact that survey 162 was an older survey than 208 gave no such dignity to its boundaries as to require the commissioner to sell the land covered by both surveys only as a part of 162. It could be sold as a part of the public school land of the state, and, if the commissioner saw proper to award it to a purchaser according to the boundaries of survey 208, his action was just as valid and effectual to pass title to the purchaser as if he had sold it according to the boundaries of

survey 162, and designated it as a portion of that survey.

[5, 6] It follows then that when the commissioner awarded to Martinez the land included within the boundaries of survey 208, it was taken from the market, and, so long as that sale remained in good standing, there was no authority or power in the commissioner to make sale to any other person. Pohle v. Robertson, 102 Tex. 276, 115 S. W. 1166. The superiority of the Martinez title did not depend upon the date the land was segregated from the public domain and appropriated to the public free school fund, as it was all school land, but did depend upon the date of his award, which was prior to that made to Allen. It being admitted that the award to Martinez was in good standing, the state was without authority to make another award to any part of the land covered by his award, and therefore the award to Allen conferred on him no right or title to the 232¼ acres which had already been awarded to Martinez.

[7] This precise question has been decided in the cases of Millar v. Ward (Tex. Civ. App.) 124 S. W. 440, and Post v. Embry (Tex. Civ. App.) 205 S. W. 514, except in those cases patents had been issued upon the prior awards. However, this makes no difference whatever, for, so long as the prior award is in good standing, the state is deprived of the power of awarding the land to a second purchaser just as effectually as if patent had issued. The opinions of the Courts of Civil Appeals in the cases referred to are clear and forceful, and we think it only necessary to make reference thereto.

[8] The conflict between survey 207 and survey 162 presents a different question: Patent to survey 207 was based upon a location certificate and a private or individual survey. However, before the survey was made or the patent issued, the land in dispute had been segregated from the public domain and vested in the public free school fund.

It has long been settled in this state that a junior patent, valid on its face, and issued by one having authority to issue same, and in conformity to law, although voidable under article 14, § 2, of the Constitution, because located on land "titled or equitably owned" by reason of a prior location, is sufficient to support the three years' statute of limitation. Hulett v. Platt, 49 Tex. Civ. App. 377, 109 S. W. 207; Houston Oil Co. of Texas v. Wm. M. Rice Institute (Tex. Civ. App.) 194 S. W. 416, and the numerous cases cited.

[9] However, it is equally as well settled that a grant from the state, in order to constitute title or color of title within the meaning of the statute of limitation, must be effectual to convey whatever right or title the

state had at the time same was issued; and a patent issued without authority in the one who issues it, or issued contrary to law, is void, and cannot constitute title or color of title. Smith v. Power, 23 Tex. 29; Texas Land & Mortgage Co. v. State, 1 Tex. Civ. App. 616, 23 S. W. 258 (writ refused); Williamson v. Brown, 49 Tex. Civ. App. 402, 109 S. W. 412; Sherwood v. Fleming, 25 Tex. Supp. 408; Mills v. Needham, 28 Tex. Civ. App. 547, 67 S. W. 1097.

The criterion by which the junior patent is judged is stated in Smith v. Power, supra, and is this:

"To render a possession of three years a bar to an action by the true owner, the defendant in possession must have held under title, or color of title, as defined in the fifteenth section of the statute. * * * To constitute such title or color of title, there must be a 'chain of transfer from or under the sovereignty of the soil.' This necessarily presupposes a grant from the government, as a basis of such transfer. And the grant must be effectual to convey to the grantee whatever right or title the government had in the land, at the time of making the grant. It need not necessarily carry with it the paramount title; but it must be title, as against the government, valid in itself, when tested by itself, and not tried by the title of others. It must have intrinsic validity, as between the parties to it; though it may be relatively void as respects the rights of third persons. If it be absolutely void, a nullity, it cannot be said to be a grant, or the basis of a transfer of the title from the government."

[10, 11] At the time patent to survey 207 issued, the 126³/₅ acres in controversy was a part of the public free school fund, and could not be disposed of except in the manner provided by law. The commissioner of the land office had no power or authority to issue patent to any part of the school land in satisfaction of a private certificate, and, in so far as he attempted to do so, his act was void. As to this 126³/₅ acres the patent passed no title, it did not bind the state, it was a nullity, and was therefore not title or color of title within the meaning of the limitation statute. As said by Chief Justice Phillips in Burnham v. Hardy Oil Co., 108 Tex. 563, 195 S. W. 1142:

"If there be a want of power to issue the grant, it does not amount to a grant, and will not constitute the basis of a transfer of title from the sovereign."

Counsel admit that this precise question was determined adversely to their contention in the case of Williamson v. Brown, supra, in which writ of error was dismissed for want of jurisdiction, but contend that the decision therein should not be followed, because contrary to the principle announced in various cases by the Supreme Court. After a careful examination of all the cases, we be-

lieve the opinion in the case of Williamson v. Brown is not only sound, but in no manner conflicts with the opinion expressed in other cases. The cases relied upon by counsel related to patents issued to conflicting private surveys, where the officer was invested with all necessary legal authority to make the grant, and was acting within the apparent scope of his legal powers; but no authority can be found where it was held that a patent issued without authority of law, or which appropriated land specially reserved by the government for a different specific purpose, was sufficient to constitute title or color of title in the meaning of the statute of limitations.

We recommend that the judgment of the Court of Civil Appeals be reversed; that the judgment of the district court awarding to defendant Henry Edds the 232¼ acres of survey No. 208 be affirmed; that the judgment of the district court as to the 126³/₅ acres of survey No. 207 be reversed, and judgment rendered in favor of plaintiffs for that tract.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and judgment of district court awarding Edds 232¼ acres of land affirmed; judgment of the district court as to the 126³/₅ acres reversed, and judgment rendered therefor for plaintiffs in error.