**MORTGAGE INVESTMENT COMPANY OF EL PASO, Texas, et al., and County of El Paso, Texas, Appellants,**

**v.**

**Adelaide BAUER, Appellee.**

**No. 6286.**

Court of Civil Appeals of Texas, El Paso.

March 28, 1973.

Rehearing Denied April 25, 1973.

Edwards, Belk, Hunter & Kerr, Crawford S. Kerr, Jr., George N. Rodriguez, Jr., County Atty., El Paso, for appellants.

Scott, Hulse, Marshall & Feuille, J. F. Hulse, Frank Feuille, IV, El Paso, for appellee.

## OPINION

RAMSEY, Chief Justice.

This is a suit involving a boundary dispute. Plaintiff-Appellee brought suit against Mortgage Investment Company of El Paso, Texas, et al., Appellants-Defendants, for declaratory judgment, removal of cloud on title, and trespass to try title affecting 216.127 acres of land. Defendants impleaded the County of El Paso, Texas, alleging that the Defendants obtained their title in a deed from the County and sought recovery from the County for partial failure of title, in the event Plaintiff was successful. In response to jury issues, the trial Court entered judgment for the Plaintiff for title and possession of the land and in favor of the Defendants against the County for the sum of $34,475.00. The Defendants and the County have appealed.

Defendants assign two points of error. The first point of error asserts that the Defendants were entitled to recover as a matter of law based on the seniority of award and patent of public school land.

Plaintiff's Section 217 was surveyed on September 28, 1905, by a deputy surveyor, which survey was approved by the County Surveyor on January 24, 1906, and the field notes filed in the General Land Office on January 27, 1906. Defendants' Section 261 was surveyed by the same surveyor on January 10, 1906, approved by the County Surveyor on January 24, 1906, and

filed in the General Land Office on January 27, 1906. The beginning point for each survey was in the east line of an adjoining survey, Section 216, though at different locations on this common adjacent section line. The calls for Defendants' Section 261 relative to the location of the common disputed north-south lines between the two sections were:

"Beginning at a stake and mound, the lower South West corner of Hugh G. Foster Survey No. 260, said stake & mound being in the East Line of A. F. Miller Survey No. 216;

Thence South with East line of said Survey No. 216 1843 varas to stake and mound for South West corner of this Survey and for North West corner of A. F. Miller Survey No. 217;

Thence East with North line of said Survey No. 217 1960.6 varas to stake and mound for South East corner of this Survey and for upper S.W. corner of Lee Moor Survey No. 221; . . ."

The Plaintiff's survey of Section 217 is shown to be the senior or first survey. Also, the two surveys adjoin, therefore no vacancy or overlap can exist and the north line of Plaintiff's Section 217 must be the south line of Defendants' Section 261.

The evidence also shows that Defendants' Section 261 was awarded to Hugh G. Foster on his application filed on August 6, 1906, and patented to W. C. Morgan on December 4, 1922. Plaintiff's section was awarded to E. D. Strong by application dated May 2, 1912, and patented to the applicant on November 17, 1925. The Defendants' Section 261 is the senior award and patent.

Defendants rely on Post v. Embry, 205 S.W. 514 (Tex.Civ.App. dism'd), and Allen v. Draper, 254 S.W. 783 (Tex.Comm'n App.1923) for the proposition that when two awards out of a tract of public school land are in conflict, the junior award must yield to the senior award regardless of the priority of survey. In attempting to research the effects of the holdings in these two cases, it appears that Post v. Embry, supra, has only been cited once, and then in Allen v. Draper, supra. In reading the opinion in Allen v. Draper, supra, the Court speaks of the descriptions of the disputed surveys as being "in conflict" without describing the nature of the conflict. Obviously, there was not enough acreage in the entire tract to satisfy the total acreage contained in the surveys. The facts are clarified, however, in Horne v. Moody, 146 S.W.2d 505, at page 508 (dism'd judgmt cor.) wherein in subsequent litigation it was alleged that in Allen v. Draper, supra, the attempt was made to "pull and place said Survey (162) further west than as originally located and thereby lapping the same over, upon and causing the same to conflict" with the other surveys.

■ It is undisputed that the Plaintiff is the owner of Section 217 and that the Defendants are the owners of Section 261. The two sections are contiguous. The two surveys adjoin with a common boundary line. The south boundary line of Defendants' Section 261 must be the north boundary line of Plaintiff's Section 217. Obviously, there can be no vacancy, encroachment or overlap between the two tracts. The general rule is still followed that a call for adjoinder ordinarily controls over a call for course and distance in the absence of a mistake. Leone Plantation, Inc. v. Roach, 187 S.W.2d 674, (Tex.Civ.App. ref'd w. o. m.); Frost v. Socony Mobile Oil Company, Inc., 433 S.W.2d 387 (Tex.Sup. 1968). Here, to attempt to plat the number of varas in each survey results in the alleged 216.127 acre shortage involved in the suit. The only matter in controversy is the location on the ground of the common boundary line between the two sections. Brown v. Eubank, 378 S.W.2d 707 (Tex. Civ.App. ref'd n. r. e.); State v. McHard, 432 S.W.2d 182 (Tex.Civ.App. ref'd n. r. e.).

■ We hold, under the circumstances presented here, that neither priority of sur-

vey nor priority of award or patent is the basic determinative factor. The controlling question is the location on the ground of the original boundary line survey. Southern Pine Lumber Co. v. Whiteman, 163 S.W.2d 212 (ref'd w. o. m.). Point of error number one is overruled.

Defendants' second point of error complains of the failure of the Plaintiff to meet her burden of proof, as a matter of law, in not retracing the footsteps of the original surveyor.

Plaintiff introduced testimony of a licensed land surveyor and engineer who testified that he had worked in the area for some twenty years and had searched for monuments and markers of adjoining surveys to correlate with the location of the line in question. He testified that he was unable to locate the original NE corner of Sec. 216 from which the beginning point of Sec. 217 was located a distance of 2521 varas south and along the east line of Section 216. In addition, he was unable to actually locate the NE corner of Sec. 217 due to its location on a precipitous bluff of Mt. Franklin which was and is virtually inaccessible. The Plaintiff's surveyor, based on the plats and surveys made by him tying the east, south and west boundary lines to existing surveys, placed the disputed boundary line at points designated on an exhibit as A to B. Defendants also presented testimony by a licensed land surveyor, who is also the County Surveyor, who placed the disputed boundary line on the same plat at points designated C and D. Defendants' surveyor based his calculations on a beginning point which he accepted as the NE corner of Sec. 216. He stated, however, that the beginning point which he used had probably been set by surveys done during the nineteen fifties. He also testified as to rusty iron pipes set in the east line of Sec. 216 with imprinted numbers indicating the sections involved. Yet he was unable to say who set these pipes or when it was done. Defendants' surveyor testified that his beginning point checked with surveys to the north and east.

Using the Defendants' beginning point, the common boundary would be located at the C to D location. Neither surveyor was able to locate and identify the original east or west markers or monuments placed on the ground by the original surveyor. At the conclusion of the evidence, the Court submitted two special issues to the jury, which issues were submitted without objection. The first issue inquired as to whether or not the disputed boundary as set by the original surveyor was at the points A to B. To this issue, the jury answered "Yes." The same question was submitted as to points C and D. To this question, the jury answered "No."

The general rule, as contended by the Defendants, and correctly so, is that in identifying the actual survey, the footsteps of the surveyor must be followed. Stafford v. King, 30 Tex. 257 (Tex.Sup.1867). The ultimate object is to determine the true location of the line in dispute where it was placed by the original surveyor. When this cannot be done with reasonable certainty due to the lapse of time or the obliteration of the evidence of the original locater, it is not only permissible, but, out of necessity, required that the courts resort to any evidence tending to establish the place of the original footsteps of the surveyor which meet the requirement that it is the best evidence of which the case is susceptible. Leone Plantation, Inc. v. Roach, supra; Taylor v. Higgins Oil & Fuel Co., 2 S.W.2d 288 (Tex.Civ.App. dism'd); Gill v. Grimes, 238 S.W.2d 989 (Tex.Civ.App. n. w. h.). We hold that the evidence is legally sufficient to support the findings of the jury. Point number two is overruled.

The County of El Paso contends that the trial Court was in error for the following reasons:

1. That there was no showing that the Commissioner who made the sale had any authority to execute a warranty deed; and,

2. That Art. 3, Sec. 52 of the Constitution of the State of Texas, Vernon's Ann.

St., would prohibit a county from executing a warranty deed.

The County sold the land in dispute to the Defendants. The sale was under the provisions of Art. 1577, Vernon's Ann. Tex.Civ.St. Authorization was duly entered on the minutes appointing the County Judge as the Commissioner to advertise the land for sale to the highest bidder, and reserving the right to reject all bids. Following the public auction, the Commissioners Court unanimously approved the terms of the sale. There were no instructions contained in either order as to the execution of any deed, nor whether or not title should be warranted. Thereafter, the County Judge, acting as the Commissioner, executed the deed on behalf of the County, conveying the land wherein the tracts were described by metes and bounds and the exact number of acres in each tract. A general warranty was contained in the deed, with the express exception inserted that the County did not warrant title to any minerals. Defendants by their cross-action seek to recover for the 216.127 acres of land on the basis of the purchase price per acre paid resulting from partial failure of title.

The County relies on Stewart v. Blain, 159 S.W. 928 (Tex.Civ.App. n. w. h.), for the proposition that in the absence of authority from the County for the agent to warrant title to land sold, there can be no liability under such covenant of general warranty. An analogous situation, however, is presented in Abbott v. City of Galveston, 97 Tex. 474, 79 S.W. 1064 (1904), wherein the Mayor was authorized to execute "a deed" and no express authorization was given to include covenants of general warranty. The Supreme Court, while admitting that there was a divergence of opinions, held that the City was bound by its warranty. The County also contends that Art. 1577, V.A.T.C.S., provides that the County, by compliance with this statutory provision and by the execution of the deed by the Commissioner shall be sufficient to convey "all the right, title and interest and estate which the county may have" in the premises. The County contends that under the wording of the statute, the County can only convey such title and interest that it owns and is not statutorily empowered to warrant any title. A similar argument was made in City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448 (1947) where the city contended that it could not warrant that which it had no power to convey. The Supreme Court stated that such position was untenable. The Supreme Court further held that the warranty does not constitute a part of the conveyance nor does it strengthen or enlarge the title conveyed.

Art. 3, Sec. 52, Constitution of the State of Texas, by its express provisions, applies to cities as well as counties. The law is well established in the above cited Supreme Court decisions that a city may be bound by its covenants of general warranty. Under these authorities, we hold that the county is likewise bound. The County's point of error is overruled.

The judgment of the trial Court is affirmed.