## ELIZABETH EDDIE ET AL. V. M. TINNIN.

### No. 852.

1. **Costs.**—Plaintiffs in trespass to try title alleged title to lots 5 and 6 in a block of surveys, and that the defendant was in possession. On trial it appeared that the defendant was not upon any part of said lots. *Held,* a judgment for costs for defendant was proper, although plaintiff proved title in said surveys or lots.

2. **Immaterial Error.**—Where defendant established title by limitation, it was an immaterial finding that there was a superior outstanding title to the land. Such finding was harmless.

3. **Agreed Boundary.**—Adjacent land owners agreed upon a division line upon which they built a fence. The plaintiff subsequently purchasing from one of the parties is estopped from attacking said agreement.

4. **Same—Estoppel.**—The defense of estoppel in trespass to try title may be proved under plea of not guilty.

5. **Declarations of Deceased in Evidence.**—It was competent to prove a parol agreement upon a division line, acted upon subsequently, after the death of one of the parties making it, and in behalf of the survivor, when the agreed line was attacked by vendees of the deceased party.

APPEAL from Travis. Tried below before Hon. JAMES H. ROBERTSON.

*John Dowell,* for appellants.—1. Appellants recovered the land sued for, and having recovered what they sued for, they could not be taxed with the costs, and the judgment is erroneous. Rev. Stats., art. 1421; 20 Texas, 483; 21 Texas, 449.

2. The court erred in finding an estoppel against plaintiffs created by A. G. Campbell, because the same was not pleaded, and the same was in the nature of an estoppel as to title which is required to be pleaded so as to give plaintiff notice, that he may not be taken unaware of such on trial. 74 Texas, 359.

3. The court erred in permitting the defendant to testify in the case as to the statement of A. G. Campbell to him about the boundary line and fence and building of said fence, as said A. G. Campbell was dead at the time defendant testified. The same was in the nature of an estoppel as to title, and had not been pleaded.

*E. T. Moore,* for appellee.—1. Where a party brings suit of trespass to try title, and on the trial it is shown that the plaintiff owned the land he sued for, but that the defendant, whom plaintiff alleged to be on the land, was not on plaintiff's land, but was in fact on his own, it is proper for the court to render judgment for the land in favor of plaintiff, and for the costs in favor of defendant. The defendant in such case would be the successful party, the plaintiff having failed to show that the land occupied by defendant was within the boundaries of the tract sued for.

2. Under the plea of not guilty the defendant may give in evidence any lawful defense, except the defense of limitation. Sayles' Civ. Stats., art. 4793; Styles v. Gray, 10 Texas, 504; King v. Elson, 30 Texas, 246; McKamey v. Thorp, 61 Texas, 648.

3. Evidence of estoppel can be introduced under the plea of not guilty. Sayles' Civ. Stats., art. 4793; Ragsdale v. Gohlke, 36 Texas, 288; Johnson v. Byler, 38 Texas, 610; Mayer v. Ramsey, 46 Texas, 376; Wright v. Doherty, 50 Texas, 41; McDow v. Rabb, 56 Texas, 162.

COLLARD, ASSOCIATE JUSTICE.—Action of trespass to try title by Elizabeth Eddie and her husband, Henry Eddie, appellants, against M. Tinnin, appellee, for lots 5 and 6 of the Mary Wade Chalmers survey, out of the Del Valle grant, on the west side of the Colorado river, about two miles below the city of Austin; the lots are alleged to contain eighty acres of land, more or less, and to be the separate estate of Elizabeth Eddie.

Defendant answered by demurrers, not guilty, claiming title by plea of ten years' limitation to a certain tract of 400 acres, part of the Del Valle grant, described by metes and bounds, and also special plea of limitation of ten years as to lots 5 and 6 of the Mary Wade Chalmers survey, the same conveyed by John A. Green, commissioner of the estate of Mary Wade Chalmers, to A. S. Roberts, and conveyed by Roberts to Archibald G. Campbell.

Plaintiffs replied by demurrers, denial, and coverture of plaintiff Elizabeth Eddie, and specially that the issue between plaintiffs and defendant is one of boundary, to which limitation does not apply.

Defendant filed supplemental answer, alleging that the property sued for is the community property of plaintiff Elizabeth Eddie and her husband, and that limitation will run against their title if defendant is on the land sued for; and further, specially, that the land claimed by plaintiff was conveyed to Elizabeth Eddie by one A. G. Campbell, under whom she claims; that defendant was in possession of the land before the deed from Campbell, and before the plaintiffs claimed the same; and that the statute commenced to run before plaintiffs' purchase, and has continued to run for ten years before suit.

The court, trying the case without a jury, gave judgment for defendant for the land in dispute, from which plaintiffs have appealed.

The court filed conclusions of fact and law, which are as follows:

"1. That on the 14th day of July, 1848, A. C. Horton was the owner of one league of land in the Del Valle eleven-league grant in Travis County, and that the land claimed in this suit by both the plaintiffs and defendant is a part of the said tract owned by said Horton.

"2. That on the said 14th day of July, 1848, the said A. C. Horton conveyed to Mrs. Mary Wade Chalmers 364 acres out of the said league. That the eastern boundary line of said tract was run out and marked

and fixed by natural objects on the ground, and is yet a well known line. The tract was and is called to be 475 varas wide. The western line was in the prairie, and was not marked on the ground, and did not call for any other line.

"3. That on the 12th day of April, 1852, said A. C. Horton conveyed to Hugh Tinnin —— acres of land out of said league. That said tract conveyed to Tinnin was run out and marked on the ground, and its east line located by marks on the ground, ten varas west of that parallel with the point called for as the west line of the said Chalmers tract; said east line of the Tinnin tract being marked on the ground at a point 485 varas west of and parallel with the east line of the Chalmers tract, while the Chalmers tract only called to be 475 varas wide. The following sketch will illustrate:

[See next page for sketch.]

"The east line of the Tinnin tract, while marked to run ten varas further west than the west line of the Chalmers tract as called for in the deed, called for the west line of the Chalmers as its east line.

"4. That the Chalmers estate was partitioned in the District Court of Travis County in 1871, and the land in question sold in blocks of forty acres or less each, by a special commissioner appointed by the court for the purpose of making partition. That this tract was divided into nine tracts of forty acres and less each, as shown by the sketch. That in making a survey of said tract, the surveyor appointed by the court discovered that the east line of the Tinnin tract was ten varas west of the west line of the Chalmers tract, according to the calls in the Chalmers deed. That he reported this fact to the special commissioner, who instructed him to disregard the Tinnin line and run out the Chalmers tract according to its field notes; that is, the east line of the Tinnin being well marked on the ground, to run that line as the base line for the subdivision, and locate the west line of the Chalmers 475 varas west of this east line, which made its west line fall at a place ten varas east of the east line of the Tinnin tract. This was done, and the forty-acre blocks were run and marked on the ground, in this, that lots 5 and 6 embraced in this suit were 475 varas square and their corners established. They were sold according to plat to A. S. Roberts, for forty acres each.

"5. That A. S. Roberts, by deed of date December 7, 1872, conveyed said lots 5 and 6 to Archibald Campbell.

"6. That about 1875 or 1876, the owners of the Tinnin tract and Archibald Campbell, desiring to build a partition fence between them, employed surveyors to run this line. That Reuben Ford was employed by said Campbell, and Dennis Corwin by the Tinnins, to run the line. Dennis Corwin had made the surveys when the land was partitioned and the lines of 5 and 6 fixed. That in making this survey they found on the ground the corners of lots 5 and 6 made in the partition, and established the line between the Tinnin land and Campbell's tracts in accordance with said corners; that is, ten varas east of the Tinnin line as marked on the ground.

"7. That soon after this Campbell and the Tinnins built a fence on the line established by Corwin and Ford, one-half of the fence being built by Mr. Campbell and the other half by the Tinnin estate, and this was then agreed to be a partition fence between them, each owning a half interest in the fence. That said fence has remained on the ground from that day to the present time; the Tinnins always claiming all land on the west of the fence as their property, their other fences joining to this fence and completely inclosing in their field the strip of land in controversy. In 1888 a' part of all this strip of land was broken up and put into cultivation, but up to 1888 the only use it was put to was for pasture purposes.

"8. That on the 26th day of September, 1884, the said Campbell and wife conveyed to the plaintiff Elizabeth Eddie the said lots numbers 5 and 6 of the Chalmers land. The description in this deed is as follows: 'Eighty acres, more or less, being lots 5 and 6 of the Mary Wade Chalmers survey of the Del Valle grant, situated on the west side of the Colorado river, and about two miles below the city of Austin, being the same that was conveyed by John A. Green, commissioner, etc., of the estate of Mary Wade Chalmers, to A. S. Roberts, and conveyed by the said A. S. Roberts to Archibald Campbell.' That the money paid for this land by plaintiff was the property of her separate estate, and this land is the separate property of Mrs. Elizabeth Eddie, and the lots as now fenced contain more than eighty acres, being, as fenced, over 475 varas wide.

"9. That the plaintiffs have been husband and wife for the past sixteen years.

"10. That the land in controversy is the strip of ten varas in width between the west line of the lots 5 and 6 of the Chalmers subdivision and the east line of the Tinnin tract as marked on the ground.

"11. That in the division of the Tinnin estate the land west of these lots 5 and 6 was given to the defendant, and he has been in possession of it for the past thirteen years."

*Conclusions of Law.*—"1. That the strip of land which plaintiffs seek to recover in this suit, to wit, the strip ten varas wide, east of the east line of the Tinnin tract, is not embraced in or any part of lots 5 and 6 owned by plaintiffs.

"2. That if said strip does not belong to the Tinnin tract, then the title thereto is still in A. C. Horton, or his heirs, if he be dead, and would be 'outstanding title' against plaintiffs.

"3. That the defendant has title to said strip of land; if not by the calls in the deed from Horton to Tinnin, which called to go to the Chalmers line, then defendant has acquired title thereto by limitation.

"4. That even if it be conceded that the strip of land aforesaid originally belonged to lots 5 and 6, and further, that there is no such limitation in this case as would protect defendant, then the boundary line having been agreed upon between Campbell and Tinnin, in 1875 or 1876, and a fence built on it, and recognized as such until 1884 by them, and the fence being there when plaintiff bought, would estop plaintiff from denying this to be the true boundary of her tract.

"Judgment will be rendered, establishing lots 5 and 6 to be the separate property of Mrs. Elizabeth Eddie, and establishing the line between defendant and plaintiff to be where the fence is now located, and for the defendant for costs."

The judgment follows the findings of the court. The facts as found by the court are correct.

Without specifying each assignment of error insisted on by appellants, they will be noticed and disposed of in the following:

*Opinion.*—Plaintiffs having sued defendant as a trespasser upon his lots 5 and 6, claiming by evidence that the lots embraced the strip in controversy, and having failed in the suit, he was bound for the costs, though he was adjudged to be the owner of the lots.

It is immaterial whether the conclusion of the court, that there was an outstanding title in Horton, was correct or not. Defendant's plea of limitation was supported by the evidence. He and those whose title he owned had been in actual adverse possession of the land in dispute for more than ten years before the suit. It had been inclosed by a fence for more than time sufficient to bar the action, the adverse claim extending to the fence, which by the judgment of the court was made the boundary between the parties. Limitation commenced to run against Mrs. Eddie's vendor before sale to her, and it was not interrupted by the fact that she was a married woman. There is no question but that defendant pleaded the statute to the land claimed by plaintiff.

There was evidence amply sufficient to sustain the court's finding, that Mrs. Tinnin and Campbell agreed upon the line between them, as found by the court, and that she built the fence on half of the line, and Campbell on the other half. Campbell being the owner of the land at the time, was bound by such agreed line. Plaintiff, his subsequent vendee, is also bound thereby. It was not necessary to plead the defense of estoppel; it was admissible under the plea of not guilty. Wright v. Doherty, 50 Texas, 34; McDow v. Rabb, 56 Texas, 162.

We can not understand why Mrs. Tinnin could not testify to the facts about the agreed line with Campbell, or why the evidence was not competent. The fact that Campbell was dead would not debar her testimony, and we have already seen that it was not necessary in this action to plead the facts, there being a plea of not guilty. The testimony of defendant, M. Tinnin, to similar facts was also admissible.

There is no merit in the assignment, that "the court erred in reasoning as to findings of fact."

The evidence supports the conclusions of fact found by the court, and in our opinion no other judgment could have been rendered under the facts, and it is affirmed.

*Affirmed.*

Delivered May 23, 1894.