## ISAAC L. ELLWOOD v. W. J. STALLCUP.

### Decided November 3, 1909.

**1.—School Land—State and County—Patent—Boundaries.**

A survey, location and patent by the State to a county of county school land will not prevail over a previous survey of the same land as State school land where the boundaries are in conflict.

**2.—Same—Case Stated.**

Land was surveyed and set apart as State school land, the alternate section in the location of a certificate of land granted to a railway. Subsequently a grant to a county of its school land was located, surveyed and patented so as to conflict in part with such State school land section. Held that the first survey set apart the State's title in trust for State school purposes and vested a right by such trust which could not be impaired by the location by the county for its school fund. The two trusts, though both were for school purposes, being distinct, the State could not, by its patent to the county, elect to transfer the property from the trust first attaching to the other.

**3.—Agency—Agreement as to Boundaries.**

A ranch company, a partnership, was bound by an agreement that its possession of land in conflict with the boundaries of a survey owned by another should not be held adversely to such owner nor be a basis for claim of limitation during the pendency of a suit involving the location of the same boundary line, but between other parties, the evidence supporting the conclusion that the person making such agreement was a partner in the ranch company, and showing that, if not a partner, he was in possession and control of the premises with general management of the ranch.

**4.—Evidence—Harmless Error.**

The admission of incompetent evidence—declarations of an agent to establish the fact of his agency—was not ground for reversal where eliminating the acts of such alleged agent, the evidence required the same judgment on the issue involved—that of limitation.

Appeal from the District Court of Lubbock County. Tried below before Hon. L. S. Kinder.

*Geo. L. Beatty* and *John R. McGee,* for appellant.—Under the pleading and proof, the plaintiff's cause of action, if any he ever had, was barred by the statute of limitation of five years, and the trial court should have so held. Rev. Stats., art. 3342; Dutton v. Thompson, 85 Texas, 116; Parker v. Brown, 80 Texas, 556.

The State of Texas having granted the estate to Donley County, the defendant, having shown and proven a regular chain of title from said Donley County down to himself, exhibited the better title to the land in controversy, and should have been given judgment for the same. Stewart v. Coleman County, 95 Texas, 445; Milam

County v. Bateman, 54 Texas, 160; Frontroy v. Atkinson, 17 Texas Ct. Rep., 749; Carter v. Clifford, 17 Texas Ct. Rep., 178; Bryan v. Shirley, 53 Texas, 459; Decourt v. Sprouls, 66 Texas, 368.

Lake and Tomb, the defendant's vendors, had a right to hold possession and use the land by their agent Rose, and in the absence of evidence as to the scope of the agent's power or authority to bind his principals, the presumption must obtain that Rose had no authority to make the agreement and statement accredited to him in Smith's depositions so as to bind his principals. McAlpin v. Cassidy, 17 Texas, 462; Railway v. Poindexter, 70 Texas, 107; Fitzhugh v. Franco-Texas Land Co., 81 Texas, 312.

The mere fact that Beatty told the plaintiff that he (Beatty) represented the defendant would not of itself be evidence that said Beatty had authority to bind the defendant by any admission, concession or agreement he is accredited with having made to or with the plaintiff. Such statements, as shown by the testimony, were not binding on the defendant and the court should have sustained the objection urged to the admission of the testimony and excluded same. Rev. Stats., art. 3370; also other authorities already cited.

The land in controversy being embraced within the lines and corners of the Donley County school league No. 10, and having been patented to said county many years before the award made by the Commissioner of survey 50 to Dalton, the latter acquired no right, title or interest in that part of said survey 50 that was in conflict with said school league, and the plaintiff acquired nothing as to that part of said survey 50 by reason of the "regular chain of transfers" from said Dalton to himself. The State having previously granted the land in controversy to Donley County, the Commissioner of the Land Office had no power to sell the same land to Dalton. Stewart v. Coleman County, 95 Texas, 445; Milam Co. v. Bateman, 54 Texas, 160.

*Geo. R. Bean,* for appellee.—Under the State Constitution, art. 7, secs. 2 and 4, reserving the alternate sections of land out of grants made or to be made to railroads, and declaring that said alternate sections should constitute a perpetual school fund, and providing that said lands should be set apart and sold under such regulations and on such terms as might be prescribed by law, a patent to a county for its county school fund of any part of a school section which had been located, surveyed and set apart to the State permanent school fund before the date of the location of the certificate to the county, is void, and can not prevail against the title of the purchaser of the school section. Constitution, art. 7, secs. 2 and 4; Rev. Stats., arts. 4264, 4265, 4280; Williamson v. Brown, 49 Texas Civ. App., 402.

FISHER, CHIEF JUSTICE.—This is an action of trespass to try title, brought by appellee against the appellant on the 25th day of November, 1907, for the title and possession of 150½ acres of land, alleged to be in the northwest part of a 640-acre tract, described as school section No. 50, in block 20, in Hockley County, Texas; the

portion of said survey in controversy being described by metes and bounds in plaintiff's first amended petition, and is in conflict with the Donley County school league survey No. 10.

On the 4th of May, 1908, the defendant filed his answer, consisting of a general exception, plea of not guilty, general denial and. the statute of limitations of five years, and also a cross-action of trespass to try title against the plaintiff for the land in question.

The case was tried in the court below without a jury and resulted in a judgment in favor of plaintiff for the land sued for, and that the defendant take nothing by reason of his cross-action against the plaintiff, and that the defendant pay all costs of suit. From this judgment appellant has perfected his appeal.

We find the following facts: There is a conflict between school section No. 50, which belongs to the plaintiff, and the Donley County school league No. 10, which is owned by the defendant. Survey No. 50 was State school land, and was located by virtue of certificate No. 652, H. E. & W. T. Ry. Co. in block 20, situated in Hockley County, Texas. Upon the application to purchase said survey it was duly and legally sold to one Jesse Dalton by the Commissioner of the Land Office on the 14th of September, 1899, and by regular chain of transfers by deeds, duly acknowledged and recorded in the deed records of Hockley County, Texas, from Dalton, that title is now in the appellee, W. J. Stallcup. The original field notes of the location of survey No. 50 are prior to the field notes and location of the Donley County school land. Based on the survey of the Donley County school land, there was on the 15th day of December, 1883, a patent issued to Donley County, field notes of which covered 150 acres of school survey No. 50, owned by the appellee, and it is that 150 acres which is now in controversy. Donley County conveyed its school lands to Gregory, Cooley and Hastings, who, with the heirs of some of these parties who are deceased, conveyed to R. C. Lake and T. B. Tomb. All of these deeds were properly acknowledged and filed for record in the office of the county clerk of Lubbock County January 30, 1902, in the deed records of said Hockley County, Texas.

On September 5, 1905, by a deed properly executed and acknowledged, R. C. Lake and T. B. Tomb conveyed league No. 10, Donley County school land to appellant, Isaac L. Ellwood, which deed was filed for record in the deed records of Hockley County on September 15, 1905. The above two deeds were offered in evidence, not only as title, but also in support of the appellant's plea of five years limitation. The taxes were paid by appellant and those under whom he holds on the Donley County school land for the years 1900, 1901, 1902, 1903, 1904, 1905, 1906 and 1907.

In 1902 Lake and Tomb and one Bird Rose, who was either a member of the firm of Lake and Tomb, or the agent and business manager of the ranch known as the eight league pasture, of which the Donley County school survey No. 10 was a part, by fence enclosed the land in question as a part of the eight league pasture, which was occupied and used as a cattle ranch, and which was in the actual possession and control of Bird Rose. They remained in

possession and use of the same from that time until they sold to the appellant Ellwood in 1905, and from that time Ellwood occupied and used the land in question as a part of his pasture.

Appellee Stallcup, by deed of date August 26, 1904, purchased school survey No. 50 from one Hiram Smith, and we conclude from the evidence that Smith holds under the original purchaser from the State, Jesse Dalton, either by conveyance from him or someone to whom he sold. In September, 1903, one B. L. Frost brought a suit in the District Court of Lubbock County against Lake and Tomb to recover part of section 74, block 20, which is shown by a map in the record, and which is in part in conflict with the Donley County school land in the same way and in the same manner as is claimed in this case. In 1904, at the time that Hiram Smith was the owner of school survey No. 50, he entered into an understanding and agreement with Bird Rose in regard to the dividing line between the Donley County school land and survey No. 50, substantially to the effect that they would agree to abide the decision in the suit then pending between Frost and the Lake-Tomb Cattle Company, as above mentioned, and substantially to the effect that during the pendency and life of that agreement, no limitation would be asserted by Bird Rose or those for whom he was acting. At that time there was a dispute and controversy between Lake, Tomb & Co. and Bird Rose on the one hand and Smith on the other as to the dividing line between their respective lands. In October, 1906, the Frost suit was compromised. Appellant Ellwood was then the owner of the land in question. Frost dismissed the suit and Ellwood paid him $5 an acre for that part of section 74 shown to be in conflict with league No. 10 of the Donley County school land, and Frost executed Ellwood a deed, dated the 19th day of October, 1906, and we take it from the evidence upon this subject that that constituted the settlement of the suit of Frost v. Lake, Tomb & Co.

We conclude as a fact that the evidence shows that Bird Rose had the authority to enter into the agreement with Hiram Smith, as above stated, and that that agreement was binding upon Lake, Tomb & Company, of which the evidence shows Bird Rose to be a member.

Appellant's second and fifth assignments of error will be considered together. It is there, in effect, contended that appellant was entitled to recover because, by virtue of the patent to Donley County, the superior title vested in it, although the land in controversy, a part of school survey No. 50, was previously located by the State as a part of the common school fund. This location, as shown by the facts, was prior to the location for Donley County. The effect of the contention is that both surveys being set apart and appropriated for a common purpose, that is, an appropriation to the common school fund, the State by its patent could and did confer upon Donley County the superior right to the land in conflict; that such selection for the use of Donley County was an election upon the part of the State to treat such fund as appropriated to a use common to both the State and the county, and an appropriation by patent to the latter would not be a diversion of the trust fund held by the State for common school purposes generally.

We can not agree with appellant in this contention, nor can we admit that art. 4269, relied upon by appellant, as construed in Stewart v. Coleman County, 95 Texas, 445, has any application to this question. Without quoting the statute referred to, it in effect states that vested rights shall not be disturbed by the location made in favor of the county. The county in this instance located the land so as to cover the lands previously located by the State for common school purposes, and to permit the location by the county to prevail would disturb a vested right in the State, unless there is some force in the suggestion of appellant, as previously outlined. Section 2, art. 7, of the Constitution, in effect, provides that all alternate sections of land reserved to the State, or that may hereafter be made to railroads, or other corporations, and one-half of the public domain, etc., shall constitute a perpetual public school fund. This provision has been carried into effect by appropriate laws of the several Legislatures. Other provisions of the Constitution protect counties in the grants made by the State for educational purposes. It may be conceded that both reservations were for educational purposes, but their enjoyment was distinct. The reservation in favor of the common school fund was for the benefit of the State at large, in which all of the counties were entitled to participate— that in favor of the county was restricted and limited to its own inhabitants. One was a general trust fund, limited only by the boundaries of the State—the other was circumscribed by the limits of the county; and if it could be conceded that the latter could lay its grant upon the previous location of the State, the effect would be to divert the fund from the general use intended for the benefit of the State at large. Such a concession would be repugnant to all of the laws upon this subject, because the public domain, set aside or located for common school purposes, can not be diverted, and constitutes a trust fund for educational purposes for the entire State. When the location was made the right was vested in the State in trust for a definite and defined purpose, and to permit a county to subsequently appropriate the land by patent or otherwise, would defeat the trust and affect an interest already vested, which is prohibited by art. 4269.

Appellant's third and fourth assignments will be considered together. The third assignment complains of the action of the court in admitting the evidence of Hiram Smith as to the agreement between him and Bird Rose. The objection, in the main, is predicated upon the proposition that Bird Rose, by the agreement in question, could not bind Lake and Tomb. The fourth assignment complains of the admission of the testimony of appellee Stallcup, tending to show a similar agreement between him and Judge Beaty as existed between Smith and Bird Rose. The objection is that the evidence does not show that Judge Beaty was the agent of the appellant Ellwood, except by his declarations, and therefore was lacking in authority to bind him by such agreement. If the testimony objected to was admissible it was sufficient to justify the trial court in holding that the possession was not adverse; consequently, limitation did not affect or bar the plaintiff's right to recover. Our

findings of fact virtually dispose of the objection urged to the evidence of Hiram Smith showing the agreement with Bird Rose. The court under the evidence could have concluded that he was a member of the firm of Lake, Tomb & Company. He was in actual possession and control of the premises, and if he was not a member of the firm, he had the general control and management of the cattle ranch, of which the land in question was a part. This being true, his agreement to not hold adversely during the pendency of the suit of Frost against Lake, Tomb & Company would suspend operation of the statute of limitations.

With reference to the objection to the evidence of Stallcup, as to what occurred between him and Judge Beatty, it is contended that the familiar principle that agency can not be established by the declaration of the agent, is applicable to this question. It can be conceded that so much of the evidence of this witness that testified to the declarations of Judge Beatty showing his agency, was not admissible, but this would not affect the judgment below or cause its reversal, because the objectionable evidence only relates to the question whether Beatty was agent for appellant Ellwood, who only acquired his right about two years before suit was filed; and if we concede that he could not bind Ellwood by conduct or statements showing that the latter was not holding adversely, the advantage gained by appellant would be in eliminating this evidence, which if done would have the effect of merely holding that for about two years, that is, from September, 1905, when appellant purchased, to the time of filing suit, limitation ran. The appellant to make out or complete the period of five years actual possession in order for the statute to operate, must rely upon the possession of his predecessors in title with whom he is connected. And when we go back to them we find an agreement between the appellee, or, in other words, those under whom he holds, with the vendors of appellant, substantially to the effect that limitation should not operate during the time of the pendency of the suit of Frost v. Lake-Tomb Cattle Co., which was settled in 1906. If this agreement did not extend to the time this suit was settled, it would certainly be operative to the time the parties who owned title and made the agreement sold to Ellwood, which, as before said, was in September, 1905. This agreement was effective at least during the time the appellant's vendors had possession, which possession, by force of the agreement, would not be adverse to the appellee or his vendors, the parties with whom the agreement was made. Such being the case, such time must be eliminated, and when this is done there is not an adverse possession for a time sufficient to complete a bar under the five years statute.

We find no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.