(Rehearing granted July 21, 1923. For opinion on rehearing, see 26 Ariz. ——, 225 Pac. 71.)

GEORGE SCHOFIELD, Appellant, v. MARTIN GOLD, DOLORES GOLD, ROSA GOLD and HELEN GOLD KELEEN, Appellees.

1. HUSBAND AND WIFE—WIFE CANNOT CONVEY COMMUNITY PROPERTY TO HUSBAND.—In view of Civil Code of 1913, paragraph 3850, requiring husband and wife to join in any deed of community real property, and paragraph 3852, emancipating a married woman of twenty-one years of age, giving her the status of a man of the same age, and forbidding her to make contracts binding the

---

See 2 C. J., p. 175; 31 C. J., p. 100.

common property, a married woman cannot convey her interest in the community property to her husband.

2. ADVERSE POSSESSION — MARRIED WOMAN'S DEED OF COMMUNITY PROPERTY TO HUSBAND HELD NOT "COLOR OF TITLE" WITHIN THREE-YEAR STATUTE.—A deed by a married woman purporting to convey her interest in the community property to her husband, which is not authorized in view of Civil Code of 1913, paragraphs 3850, 3852, does not constitute "color of title" within the three-year statute of limitations.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Joseph S. Jenckes, Judge. Judgment reversed and cause remanded, with directions.

Messrs. Alexander & Christy, for Appellant.

Messrs. Jennings & Strouse and Mr. Thomas W. Nealon, for Appellees.

ROSS, J.—This action is for partition and, incidentally, to cancel a deed of the property sought to be partitioned. The appeal is from an order sustaining demurrers, and a judgment of dismissal.

The plaintiff's mother, Dolores Schofield, in 1895, intermarried with defendant Martin Gold and lived with him continuously as his wife until July 3, 1916, on which date she died, intestate. The other three defendants, Helen, Rosa and Dolores Gold, were the issue of this marriage. During coverture they accumulated considerable property, which is alleged to belong to the community. February 15, 1916, Dolores Gold deeded all her right, title and interest in and to their community property, and in and to her husband's separate property, to her husband, Martin Gold, in consideration of love and affection. The deed is regular in form, properly acknowledged, and was recorded July 20, 1916, at the request of Martin Gold.

The above facts all appear in the complaint. The plaintiff prays for the cancellation of the deed from his mother to Martin Gold, for an accounting, and that the community property be partitioned. The demurrers, under the rules of pleading, confessed the truth of the facts above stated.

If the deed was good and had the effect of conveying all of Dolores' community interest to her husband, the demurrers were properly sustained; or, if it was "title, or color of title," since the complaint shows Martin's possession had been peaceable and adverse for more than three years, they were properly sustained. If the deed was not good, or if it did not amount to "title, or color of title," they should not have been sustained, for, in that event, Dolores, having made no will, her community interest would descend to her four children in equal shares, and plaintiff would be entitled to one-fourth thereof. Par. 1100, Civ. Code 1913.

Was the deed good, and can a wife dispose of her interest in the community property in this way? We think not.

Under the statute as it exists, now and as it was in 1916, the husband is vested with the sole power to dispose of the personalty of the community, but neither he nor the wife may deed or mortgage the community realty, except unpatented mining property. If the community realty, or any of it, is to be deeded away or mortgaged, it is essential that the husband and wife join in the execution of such instruments. The present deed is executed by one of them only, the wife; whereas the statute requires two grantors of any deed of the community real property, both the husband and the wife. Paragraph 3850, Id.

Paragraph 3852, Id., emancipates a married woman of twenty-one years of age and upwards and gives

her the status before the law of men of the same age, except in one instance, which is indeed very significant. In a preceding paragraph (3850) the husband is deprived of the power (one that he had under the laws of 1877 and 1887, and has yet in Texas and some of the other community property states) of disposing of the realty without the joint action of the wife; and in this paragraph (3852) the wife is affirmatively forbidden the right to make contracts binding the common property. She has never had that power and the only reason for forbidding it to her must have been to emphasize the idea that the only way to deed or mortgage the community realty was by the husband and wife joining in such instruments. It is quite obvious that if the wife may deed her community interest to her husband, without his joining her, she may deed it to a third party and thus dissolve the community ownership. It would seem the prohibition against her making contracts binding the common property should be construed to apply to any contract that would or might result in the enlargement or diminution of the common estate, or in the transfer of the management and control of the common property from the husband to the wife, or in the division of the management and control between the husband and wife.

The defendants, as authority sustaining their contention that the wife may deed her community interest to the husband, cite the case of *Luhrs* v. *Hancock*, 6 Ariz. 340, 57 Pac. 605, decided in 1899. That case is not in point. The court there did sustain the right of the husband to convey by deed his interest in the community to the wife, under the law as it existed at that time. As indicated above, under the law in 1899 (paragraph 2102, Rev. Stats. 1887; paragraph 1975, Comp. Laws 1877), there was no restriction or limitation on the power and right of the

husband to dispose of the community, both real and personal.

We conclude the deed was void in so far as it undertook to convey Dolores' interest in the community property, and to that extent should be canceled, but no further.

This brings us to the second point, and that is: Was such deed, "title, or color of title," as those words are used in the three-year statute of limitation? That also must be answered in the negative. This statute is taken from Texas and is common to these two states only. The decisions of the courts of other states as to the meaning of "color of title," therefore, can be of little or no value. As was said by the court in *League* v. *Atchison*, 6 Wall. 112, 18 L. Ed. 764 (see, also, Rose's U. S. Notes), in discussing the Texas three-year statute of limitation (which we copied; see articles 5672, 5673, Vernon's Sayles' Texas Civ. Stats. 1914; and paragraphs 695–696, Civ. Code Ariz. 1913):

"Unnecessary labor and learning has been expended by counsel, as to the construction of similar statutes in other states, and as to whether the possession of defendant was adverse or not. This section of the statute is its own interpreter. It was not made to protect mere adverse possession; it carefully defines the construction of the words used. By the term 'title,' as used in this section, is meant 'a regular chain of transfer from, or under the sovereignty of the soil; and color of title is constituted by a consecutive chain of such transfer down to him or her or them in possession, without being regular, as if one or more of the memorials or instruments be not registered, or not duly registered, or be only in writing, or such like defect. . . . '"

Since the deed from Dolores Gold to defendant Martin Gold was not effectual to convey her interest in the community property, she continued down to the time of her death, July 3, 1916, to be an equal

owner therein. At her death her interest passed to the survivor and her children. The link in the chain of transfer from the sovereignty of the soil of her community interest to Martin Gold and her children was by operation of law, and not by deed.

In an early case (*Thompson* v. *Cragg,* 24 Tex. 582, reading page 596) the Texas courts held color of title and title to be practically the same thing, in this language:

"Nor can there be color of title, as defined by the statute, where there is a complete hiatus in the chain. Color of title differs from title only, in externals. The substance of both is the same. Were this not so, if color of title were something intrinsically and substantially less, or weaker than title, then the wisdom of the legislature could not be vindicated. . . . "

If there is a break in the chain of title, or a hiatus, as some of the courts say, then it is not title nor color of title. If the instrument relied upon as constituting a link in a regular chain of transfer from or under the sovereignty of the soil, or as constituting the color of title, is void because of want of power or authority on the part of the person executing it, then it may not be used in aid of a bar under the three-year statute of limitation. It is then no link in the chain of title. This seems to be the rule laid down and followed uniformly by the Texas courts. *Grigsby* v. *May,* 84 Tex. 240, 19 S. W. 343; *Hulett* v. *Platt,* 49 Tex. Civ. App. 377, 109 S. W. 207; *Spikes-Nash Co.* v. *Manning* (Tex. Civ. App.), 204 S. W. 374. In the latter case it was said, and indeed that seems to be the consensus of the Texas courts, that—

"A conveyance which invests the grantee with no title whatever because of a lack of power in the grantor to convey may form the basis of a title by limitation under the five-year statute, but it cannot form a muniment under the three-year statute."

The other questions raised on this appeal were incidental to the ones we have discussed and of minor importance. We therefore conclude it would be of no benefit, in any further proceedings herein, to pass upon them.

The judgment is reversed and the cause remanded, with directions to the lower court to overrule the demurrers and reinstate the complaint.

McALISTER, C. J., and LYMAN, J., concur.