NOTICE: NOT FOR OFFICIAL PUBLICATION
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STEVEN MEYER, et al., *Plaintiffs/Appellees*,

*v.*

23526 FLORENCE, LLC, et al., *Defendants/Appellants*.

No. 1 CA-CV 22-0485
FILED 6-6-2023

---

Appeal from the Superior Court in Maricopa County
No.  CV2020-006325
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

---

COUNSEL

Fidelity National Law Group, Phoenix
By Nathaniel B. Rose
*Co-Counsel for Defendant/Appellant 23526 Florence, LLC*

Martinet Law, Phoenix
By Philippe Martinet
*Co-Counsel for Defendants/Appellants*

Parker Daniels Kibort, Minneapolis, MN
By Andrew D. Parker, Abraham S. Kaplan
*Counsel for Plaintiff/Appellee Steven Meyer*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Vice Chief Judge David B. Gass and Chief Judge Kent E. Cattani joined.

---

**F U R U Y A**, Judge:

¶1        Appellants 23526 Florence, LLC ("Florence") and Carl's AZ Renovations, LLC ("Carl's") (collectively the "Buyers") challenge the superior court's summary judgment ruling rejecting their claims seeking to quiet title in real property Florence purported to purchase from Gregory Meyer in 2020 (the "Property"). We affirm because the Buyers do not have standing to force a distribution from a spendthrift trust holding the Property and the evidence does not show Gregory had sufficient title to, or interest in, the Property to support Buyers' claims.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        Lorayne Meyer acquired the Property in 1986. She later held it as trustee under The Lorayne M. Meyer Family Living Trust (the "Trust") in 2002. Under the terms of the Trust agreement, each of Lorayne's four children—William Meyer, Judy Postier, Steven Meyer, and Gregory Meyer—would receive 25 percent of the Trust estate after payment of Trust expenses.

¶3        The Trust agreement included a spendthrift provision to prevent any of the beneficiaries from assigning their interests in the Trust. Further, Article VI of the Trust agreement gave the trustee:

> full power to do everything it deems to be in the best interests of the beneficiaries of the trust, including . . . continue to hold any property received in trust, including undivided interests in real property, and to operate any property or any business received in trust as long as the Trustee, in the Trustee's discretion, may deem advisable, notwithstanding the fact that any or all of the investments retained are of a character or size which, but for this express authority, would not be considered proper for the Trustee.

2

¶4 Gregory has a history of mental illness dating back to the 1970s. Over the years, Gregory has at times refused to take his medications and has occasionally been committed to mental health institutions.

¶5 In 2004, Lorayne amended the Trust agreement to provide that the Property would constitute Gregory's 25 percent share. However, it also clarified that any "surplus must be funded into the shares of the other beneficiaries" if it exceeded 25 percent of the Trust estate. This 2004 amendment did not alter Article VI.

¶6 Lorayne died in 2005, and William and Judy became co-trustees. In January 2006, an attorney for the Trust, citing Gregory's "health situation," sent Steven and Gregory a letter proposing that Gregory accept a life estate in the Property and reside there rent-free while the Trust paid all other expenses associated with the Property. Gregory declined and demanded the Trust give him title to the Property, which William and Judy did not do.

¶7 Gregory began living at the Property in late 2006 or 2007. On December 19, 2006, he signed and recorded a pre-printed form document labeled as "warranty deed" which purported to transfer title from the Trust to himself (the "2006 Warranty Deed"). Gregory signed the 2006 Warranty Deed exclusively as "grantee," crossing out the designation on the form labeled "grantor" and relabeling it by hand as "grantee." Neither William nor Judy signed the 2006 Warranty Deed, and no other persons at that time were authorized to dispose of Trust assets.

¶8 On January 12, 2007, Gregory recorded a quitclaim deed that he signed as both grantor and grantee (the "2007 Quitclaim Deed"). The Trust is not referenced at all in the 2007 Quitclaim Deed.

¶9 Gregory continued to live at the Property until 2011, when he was arrested, imprisoned, and later transferred to a mental health facility. Following his release in mid-2012, Gregory moved back into the Property, and Steven visited multiple times each year thereafter.

¶10 On March 26, 2020, Gregory contracted to sell the Property to Higher Offer, LLC. Florence completed the purchase, and Gregory recorded a warranty deed purporting to transfer title to Florence on April 8, 2020. Three weeks later, Florence recorded a document purporting to convey title to Carl's.

¶11 At some point after April 2020, Gregory left the Property without notice to his family, to Florence, or to any others. His current

whereabouts are unknown. Judy and William resigned as co-trustees, and Steven became the sole successor trustee. Steven then sued the Buyers, seeking to quiet title in the Property and damages for unjust enrichment. The Buyers counterclaimed against the Trust[1] and filed third-party claims against Gregory and others.

**¶12** The Buyers moved for summary judgment on their quiet title counterclaim, contending the Trust was obligated to transfer title to the Property to Gregory upon Lorayne's death. They argued in the alternative that even if he did not hold title in 2020, Gregory had adversely possessed the Property under color of title because of the 2006 Warranty Deed and the 2007 Quitclaim Deed, or for at least ten years without color of title. *See* Arizona Revised Statutes ("A.R.S.") §§ 12-523, -526.

**¶13** The Trust also moved for summary judgment, contending that neither the 2006 Warranty Deed nor the 2007 Quitclaim Deed was valid and denying that Gregory had adversely possessed the Property.

**¶14** The superior court denied the Buyers' motion and granted summary judgment to the Trust on its quiet title and declaratory relief claims. The court ruled: (1) the Trust maintained title to the Property at all relevant times, (2) the 2006 Warranty Deed and 2007 Quitclaim Deed were invalid, and (3) the Buyers did not present "any material evidence of adverse possession occurring during the 2007–2020 time period." The court entered a final judgment under Arizona Rule of Civil Procedure ("Rule")

---

[1] Nothing in the record suggests that the Trust has acted through someone other than its various trustees at all times relevant to this case. But because the trustees' personal liability and its status as a non-legal entity are not at issue in this appeal, for the sake of brevity and convenience, we refer simply to the "Trust" as shorthand for a longer reference to the trustee acting in representative capacity for the Trust. In so doing, we nevertheless acknowledge the Trust, as an Arizona non-business trust (*see* A.R.S. §§ 10-1871, -1879), is not itself a jural entity, and is therefore incapable of holding property, transacting business, pursuing or defending litigation, or otherwise acting in its own right. *See* A.R.S. § 14-10106(A); *McLeod v. Deutsche Bank Nat'l Tr. Co.*, 1 CA-CV 15-0504, 2017 WL 2189498, at *3 ¶ 13 (Ariz. App. May 18, 2017) (mem. decision) ("Generally, a common-law trust is not considered a legal entity capable of suing or being sued.") (citing cases).

54(b) quieting title in the Property in favor of the Trust. The Buyers timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶15** Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(a). We review a grant of summary judgment de novo. *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58 ¶ 9 (2022). We review the evidence and any reasonable inferences from those facts in the light most favorable to the Buyers. *Mesquite Power, LLC v. Ariz. Dep't of Revenue*, 252 Ariz. 74, 79 ¶ 12 (App. 2021).

## I. The Buyers Lack Standing to Compel the Trust to Distribute the Property to Gregory or Themselves.

**¶16** The Trust contends the Buyers cannot compel it to distribute the Property to Gregory because they are not Trust beneficiaries. The Buyers argue the Trust waived this argument by not raising it in the superior court. Although the parties did not litigate this question before the court in detail, the Trust did argue the Buyers lacked standing to assert Trust agreement violations in their summary judgment briefing, and both sides addressed the issue on appeal. Thus, we decline to apply waiver. *See Torres v. Jai Dining Servs. (Phoenix), Inc.*, 253 Ariz. 66, 71 ¶ 15 (App. 2022) (declining to apply waiver where there is "no unfair surprise"), *review granted sub nom on other grounds, Torres v. Jai Dining Servs.*, CV-22-0142-PR, 2023 WL 2801989 (Ariz. Apr. 5, 2023).

**¶17** We review questions of standing de novo. *In re Indenture of Tr. Dated Jan. 13, 1964*, 235 Ariz. 40, 44 ¶ 5 (App. 2014). Generally, only a beneficiary or one suing on a beneficiary's behalf can sue a trustee to enforce the trust or for breach of trust. *Matter of Hayes*, 129 Ariz. 174, 176 (App. 1981) (quoting Restatement (Second) of Trusts § 200 (1959)). The Buyers argue, however, that Florence is a creditor or assignee who can enforce the "mandatory distribution" of the Property to Gregory under A.R.S. § 14-10506(A). This statute provides:

> Whether or not a trust contains a spendthrift provision, a creditor or assignee of a beneficiary may reach a mandatory distribution of income or principal if the trustee has not made the distribution to the beneficiary within a reasonable period after the mandated distribution date unless the terms of the trust expressly authorize the trustee to delay the distribution to protect the beneficiary's interest in the distribution.

5

As noted above, the Trust agreement authorized the trustee "to do everything it deems to be in the best interests of the beneficiaries," including "continue to hold any property received in trust." The Trust maintains this provision grants discretion to the trustee over whether to distribute the Property to Gregory, which would prevent the Buyers from forcing distribution as creditors or assignees under A.R.S. § 14-10506(A).

¶18        However, we need not decide whether distribution of the Property to Gregory was mandatory or discretionary because the Buyers cannot prove they are assignees or creditors. *See Pima Cnty. Hum. Rts. Comm'n v. Ariz. Dep't of Health Servs.*, 232 Ariz. 177, 182 ¶ 17 n.5 (App. 2013) (explaining we decline to decide issues not required to resolve the appeal). There is no evidence in the record Gregory ever assigned his interest *in the Trust* to the Buyers—the Buyers merely contend he purported to sell them title to the Property. And even if Gregory had purported to assign his interest in the Trust, the Trust agreement explicitly forbade such an assignment. *See Tr. Dated Jan. 13, 1964*, 235 Ariz. at 46 ¶¶ 12–13 (holding spendthrift provision prevents beneficiary from assigning interest in trust). Therefore, the Buyers cannot prove they are assignees of Gregory's interest in the Trust itself and are not beneficiaries of the Trust.

¶19        As non-beneficiaries, to reach the issue of whether the Trust agreement required the Trust to distribute the Property to Gregory, the Buyers must prove they are Gregory's creditors. A.R.S. § 14-10506(A). Counsel for the Buyers conceded at oral argument that they have not obtained a judgment against Gregory for his alleged failure to deliver unencumbered title. And they do not claim to have any judgments against Gregory, any trustees of the Trust, or Trust property. As such, they have not provided competent evidence they qualify as creditors that could compel distribution of Trust "income or principal."[2] *Id.*

¶20        Because Gregory never assigned his interest in the Trust to the Buyers and they do not have a judgment against him, the Buyers cannot establish they are assignees or creditors of Gregory. Therefore, they have

---

[2]        We are further unpersuaded that the Property would qualify as "income or principal" under A.R.S. § 14-10506(A). If the Buyers did qualify as assignees or creditors, they might possibly compel the Trust to distribute to them the value of the Property or judgment if they proved distribution of the Property to Gregory was mandatory under the Trust agreement. However, they do not seek such a remedy. And in any event, the Buyers have not proven they qualify as assignees or creditors.

no standing to compel the Trust to distribute the Property to Gregory or to themselves in this litigation.

## II.    The Buyers Did Not Present Competent Evidence of Adverse Possession.

¶21    The Buyers also contend Gregory adversely possessed the Property before selling it to Florence. Adverse possession is "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." A.R.S. § 12-521(A)(1). To successfully claim title by adverse possession, the Buyers must show Gregory's "adverse possession was actual, open and notorious, hostile, under a claim of right and . . . exclusive and continuous for" the applicable statutory period. *Stat-o-matic Ret. Fund v. Assistance League of Yuma*, 189 Ariz. 221, 222 (App. 1997). "An action to recover real property from a person in peaceable and adverse possession under title or color of title" must be brought "within three years after the cause of action accrues." A.R.S. § 12-523(A). If adverse possession occurs without title or color of title, the action must be brought within ten years of accrual. A.R.S. § 12-526(A).

¶22    Whether the adverse possession elements have been met generally presents questions of fact based on the circumstances of each case. *Sabino Town & Country Ests. Ass'n v. Carr*, 186 Ariz. 146, 149 (App. 1996). But adverse possession claims are disfavored and must be proven by clear and convincing evidence. *Id.*; *Stat-o-matic*, 189 Ariz. at 222.   This  burden is even higher where a party asserts an adverse possession claim against family members or, as here, a trust whose sole trustee is an immediate family member. *See Tena v. Yorgulez*, 24 Ariz. App. 311, 314 (1975).

### A.    The 2006 Warranty Deed and 2007 Quitclaim Deed Do Not Establish Color of Title.

¶23    The Buyers contend the three-year period of § 12-523(A) applies because Gregory's possession was under color of title. "Color of title," as relevant here, means:

> a consecutive chain of such transfer down to the person in possession without being regular, as if one or more of the memorials or muniments is not recorded or not duly recorded or is only in writing, or such like defect as does not extend to or include the want of intrinsic fairness and honesty.

A.R.S. § 12-523(B).

¶24        The Buyers rely on the 2006 Warranty Deed and the 2007 Quitclaim Deed, contending that documents used to make a claim of right under color of title can be "something less than [that] required to transfer legal title." This maxim is generally true. *Van Zandt v. Chan*, 7 Ariz. App. 360, 363 (1968). However, "[i]f the instrument relied upon . . . as constituting the color of title[ ] is void because of want of power or authority on the part of the person executing it, then it may not be used in aid of a bar under the three-year statute of limitation." *Schofield v. Gold*, 25 Ariz. 213, 218 (1923).

¶25        Here, Gregory signed the 2006 Warranty Deed as the grantee, but it was not signed by any authorized representative of the Trust to act as grantor. It appears someone wrote in Lorayne's name, but the document also notes she died 14 months earlier. To be valid, deeds must, among other things, be signed by the grantor. A.R.S. § 33-401(B). As the 2006 Warranty Deed bears no such signature, and because Gregory had no authority to execute it as grantor, it cannot serve as color of title under § 12-523(B). *Schofield*, 25 Ariz. at 218.

¶26        As for the 2007 Quitclaim Deed, Gregory signed it as both grantor and grantee. Even assuming he was adversely possessing the Property at that time, he had not yet done so for three years, much less ten. He therefore lacked authority to sign as the grantor, and the 2007 Quitclaim Deed does not establish color of title. *See Simpson v. Shaw*, 71 Ariz. 293, 297 (1951) (applying "the proposition of law that an individual can convey no better title to an item of property than that which he himself possesses"); *see also SWC Baseline & Crismon Invs., L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, 280–81 ¶ 29 (App. 2011) (stating that a quitclaim deed "conveys any interest the grantor possesses in the property, but neither warrants nor claims that title is valid") (citations omitted).

### B.    The Buyers Did Not Show Gregory Adversely Possessed the Property for Ten Years.

¶27        Because Gregory lacked color of title, A.R.S. § 12-526(A) requires the Buyers prove Gregory adversely possessed the Property for ten years.

¶28        The Buyers argue Gregory made a hostile claim of right when he recorded the 2006 Warranty Deed and used the Property without interruption until he sold it to Higher Offer/Florence in 2020. But they presented no evidence to establish uninterrupted use. The parties' statements of fact largely omit the years between the 2007 Quitclaim Deed and the 2020 sale. Indeed, the only record evidence regarding Gregory's use

of the Property in those years came from the Trust. And that evidence suggests Gregory did not live at the Property for several months in 2011 and 2012 when he was incarcerated or institutionalized. Further, undisputed evidence establishes that Steven stayed at the Property three to five times a year between 2007 and 2011 and six to 12 times a year from 2012 to 2019, suggesting Gregory's use was neither exclusive nor clearly hostile, at least as to Steven. *See Tena*, 24 Ariz. App. at 314. Given this record and the relatively high burden required to prevail, we cannot say the superior court erred by granting summary judgment against Buyers' on their adverse possession claim.

### III.    Attorneys' Fees and Costs on Appeal

**¶29**        The Buyers request their attorneys' fees incurred in this appeal under A.R.S. § 12-1103(B), which authorizes an award to the prevailing party in a quiet title action if certain prerequisites are met. *Cook v. Grebe*, 245 Ariz. 367, 369 ¶ 5 (App. 2018). The Buyers did not prevail on their quiet title claim. We therefore deny their request. The Trust does not request fees but may recover its taxable costs incurred in this appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

**¶30**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA